STATE OF NORTH CAROLINA v. ROY OSWALD BODDEN

No. COA07-719

(Filed 20 May 2008)

**1. Evidence— nine-millimeter bullet—not connected to crime or defendant—harmless error**

The trial court committed harmless error in a second-degree murder case by admitting a nine-millimeter bullet found near the scene of the crime when there was no evidence that the bullet was connected to the crime because: (1) items that are not connected to the crime charged and which have no logical tendency to prove any fact in issue are irrelevant and inadmissible; (2) in the absence of evidence connecting the nine-millimeter bullet to the victim or to defendant, the bullet does not have any tendency to prove that defendant committed the crime; and (3) the admission was not prejudicial when there was no reasonable possibility that admission of the bullet contributed to defendant's conviction considering the other evidence of defendant's guilt, including witness testimony and the victim identifying defendant as the person who shot him.

**2. Evidence— witness afraid to testify for fear of gangs—reference to testimony in closing argument—waiver**

The trial court did not abuse its discretion in a second-degree murder case by admitting testimony of a prosecution witness that he was afraid to testify for fear of gangs, and the prosecutor's reference to that testimony during closing arguments did not constitute prejudicial error, because: (1) defendant waived his right to object to the admission of this testimony since the State's witness testified about the coparticipant's involvement in gang activity without any objection by defendant; and (2) the evidence was previously admitted during the trial, and thus allowing repetition of the evidence by the State during closing arguments was permissible.

**3. Constitutional Law; Evidence— hearsay—victim's statements—dying declarations—Confrontation Clause**

The trial court did not abuse its discretion in a second-degree murder case by admitting the victim's statement to an officer while waiting for an ambulance that defendant was with the person who shot him and his statement to another officer in the emergency room that defendant shot him, even though defendant contends they do not qualify as dying declarations and are barred under the Confrontation Clause of the Sixth Amendment, because: (1) the circumstances surrounding the victim's statements support the requirements for admission of a dying declaration when about three and a half minutes after the victim called 911 he told his mother that he was going to die, the victim had been shot five times and was bleeding, and he was taken to the hospital to receive medical treatment and died the same day; (2) the victim's statements were both testimonial statements, and the confrontation clause allows an exception for testimonial dying declarations; and (3) the question of whether the forfeiture by wrongdoing exception applies need not be addressed since defendant's statements were properly admitted as dying declarations and those statements do not violate the Sixth Amendment right to confrontation.

**4. Appeal and Error— motion for appropriate relief—prosecution's theory in separate trial using different inferences for same evidence**

Defendant's motion for appropriate relief in a second-degree murder case, based on the prosecution arguing an alleged incon-

sistent theory in a coparticipant's trial regarding the victim's belief of impending death, is denied because: (1) the State's theories were permissible inferences interpreting the same evidence; (2) the prosecution's theory in a separate trial does not taint or negate the permissible inferences regarding admissibility of the pertinent hearsay statements in defendant's trial; (3) defendant concedes the State did not present different theories regarding defendant's culpability and that the officers' testimony about the victim's statements was identical in both trials; and (4) it was appropriate for the State to argue different inferences regarding the same evidence to different juries when the State did not introduce inconsistent evidence.

Appeal by defendant from judgment entered 19 December 2006 by Judge Ripley E. Rand in Durham County Superior Court. Heard in the Court of Appeals 19 February 2008.

*Attorney General Roy Cooper, by Assistant Attorney General Daniel P. O'Brien, for the State.*

*Appellate Defender Staples Hughes, by Assistant Appellate Defender Benjamin Dowling-Sendor, for defendant-appellant.*

CALABRIA, Judge.

Roy Oswald Bodden ("defendant") appeals a judgment entered upon a jury verdict finding him guilty of second-degree murder of Nathan Alston ("the victim"). We find no error.

On 2 February 2004, Lathan Smith ("Smith") and the victim obtained drugs from one of defendant's drug suppliers for the purpose of selling drugs for defendant. Instead of selling the drugs, Smith and the victim personally used them. Later, at a store adjacent to an Amoco gas station ("the gas station store"), defendant asked Smith whether he had seen the victim. At the time, defendant was unaware that the victim was also at the gas station store. When the victim appeared, defendant confronted him. Defendant told the victim, "you better get my money." The defendant also told the victim he would be right back and left the gas station store. About an hour later, defendant and Michael Goldston ("Goldston") returned to the gas station store looking for the victim. When the victim noticed defendant and Goldston, he started running down the sidewalk. The victim was shot five times in front of his apartment building in Durham, North Carolina around midnight on 3 February 2004.

STATE v. BODDEN

[190 N.C. App. 505 (2008)]

Durham City Police Officer A. M. Cristaldi ("Officer Cristaldi") responded to a dispatch call just after midnight. Officer Cristaldi arrived at the victim's apartment at 2507 South Roxboro Street in Durham, North Carolina. Officer Cristaldi found the victim bleeding, lying on the floor and screaming for help. Officer Cristaldi asked the victim who shot him. The victim told the officer he was shot outside in the parking lot and he did not know who the shooter was, but the defendant was with him. The victim was transported by ambulance to the emergency room at Duke Hospital. Durham City Police Officer Dana Keith ("Officer Keith") spoke to the victim at the hospital. When Officer Keith asked the victim who shot him, the victim told him "Roy" shot him. Officer Keith asked if Roy's last name was Bodden. The victim answered affirmatively. The victim died from the gunshot wounds. Defendant was charged with first-degree murder of the victim.

On 4 December 2006, defendant was tried in Durham County Superior Court before the Honorable Ripley E. Rand. Defendant filed a pre-trial motion in limine to exclude the victim's statements to Officers Cristaldi and Keith. Defendant's motion was denied. At trial, the State presented evidence regarding how the victim was shot. Smith testified that defendant and Goldston started shooting at the victim after he ran from the gas station store. Pamela Page ("Page"), an acquaintance of the victim, testified she was at the gas station store the night the victim was shot. Page heard defendant tell the victim he was tired of "taking his shit and stuff." Page also heard the defendant say to the victim, "Man, I'm going to get you, I'll kill you." After defendant left the gas station, Page and the victim walked together down a sidewalk. When Page and the victim separated, only the victim continued walking down the sidewalk. Page then heard gunshots coming from the victim's apartment building that was located near the gas station.

The trial court instructed the jury on first-degree murder, second-degree murder, aiding and abetting, and acting in concert. On 13 December 2006, the jury returned a verdict finding defendant guilty of second-degree murder of the victim. Defendant was sentenced to a minimum term of 189 months and a maximum term of 236 months in the North Carolina Department of Correction. Defendant appeals.

I. Admissibility of Evidence: The Nine-Millimeter Bullet

**[1]** Defendant argues the trial court committed reversible error by admitting a nine-millimeter bullet found near the scene of the crime

**STATE v. BODDEN**

[190 N.C. App. 505 (2008)]

because there was no evidence that the bullet was connected to the crime. We agree that the trial court's admission of the nine-millimeter bullet was error, however we disagree that this error was prejudicial.

"Pursuant to North Carolina Rule of Evidence 401, relevant evidence means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." *State v. Grant*, 178 N.C. App. 565, 573, 632 S.E.2d 258, 265 (2006) (quoting N.C. Gen. Stat. § 8C-1, Rule 401 (2005)) (internal brackets and quotations omitted). "Although a trial court's rulings on relevancy are not discretionary and we do not review them for an abuse of discretion, we give them great deference on appeal." *Id.* (citing *State v. Streckfuss*, 171 N.C. App. 81, 88, 614 S.E.2d 323, 328 (2005)).

Items that are not "connected to the crime charged and which have no logical tendency to prove any fact in issue are irrelevant and inadmissible." *State v. Wallace*, 104 N.C. App. 498, 502, 410 S.E.2d 226, 228-29 (1991). For example, in *State v. Patterson*, 59 N.C. App. 650, 653, 297 S.E.2d 628, 630 (1982), where a robbery was committed with a small handgun, admission of a sawed-off shotgun into evidence was error. However, in *State v. Burke*, 342 N.C. 113, 119, 463 S.E.2d 212, 216 (1995), a forty-four caliber handgun with a box of forty-four caliber bullets found in a dumpster were relevant and admissible where the defendant admitted he owned a forty-four caliber handgun.

Here, three bullets from the same revolver were removed from the victim's body. According to Agent Thomas Trochum with the State Bureau of Investigation, the bullets used to shoot the victim were either .38 or .357 caliber bullets. The day after the shooting, the police canvassed the area around the gas station and recovered a nine-millimeter bullet near the mailbox of apartment building 2519, which is approximately halfway between the gas station store and the victim's apartment. This bullet came from a semi-automatic weapon, but it was not the same weapon as the one that fired the bullets that were removed from the victim's body.

The State argues admission of the nine-millimeter bullet was not error because there was some evidence presented that two shooters and two guns were involved in the shooting. However, the issue is whether the admission of the nine-millimeter bullet tends to prove a fact of consequence at issue in the case. *Grant, supra.* The fact at consequence is defendant's connection with the crime charged. In the

absence of evidence connecting the nine-millimeter bullet to the victim or to defendant, the bullet does not have any tendency to prove that the defendant committed the crime.

Even if the admission of the nine-millimeter bullet was error, in order to reverse the trial court, the appellant must establish the error was prejudicial. N.C. Gen. Stat. § 15A-1443(a) (2007) (defendant must show there is a reasonable possibility a different result would have occurred but for the error). If the other evidence presented was sufficient to convict the defendant, then no prejudicial error occurred. *State v. Sierra*, 335 N.C. 753, 762, 440 S.E.2d 791, 796 (1994).

The State asserts admission of the evidence, if error, was not prejudicial because the State presented overwhelming evidence that defendant acted in concert with Goldston. We agree. We conclude that admission of the nine-millimeter bullet, although irrelevant, does not amount to prejudicial error, because there is no reasonable possibility that admission of the bullet contributed to the defendant's conviction considering the other evidence presented. Witnesses testified that defendant was at the scene of the murder, argued with the victim before the shooting, and threatened to kill the victim. Furthermore, the victim identified the defendant as the person who shot him. We conclude there was no prejudicial error.

II. Admissibility of Evidence: Reference to Gang Activity

A trial court's rulings on relevancy are not discretionary and not reviewed under an abuse of discretion standard, however such rulings are given great deference on appeal. *Wallace*, 104 N.C. App. at 502, 410 S.E.2d at 228. The standard of review on admission of relevant evidence is abuse of discretion. *Id.* at 504, 410 S.E.2d at 229.

[2] Defendant contends admitting the testimony of a prosecution witness that he was afraid to testify for fear of gangs, and the prosecutor's reference to that testimony during closing arguments constituted prejudicial error.

The State argues defendant waived his right to object to admission of this testimony because the State's witness Derrick Trice ("Trice") testified to Goldston's involvement in gang activity without an objection by the defendant. *State v. Whitley*, 311 N.C. 656, 661, 319 S.E.2d 584, 588 (1984) ("Where evidence is admitted over objection, and the same evidence has been previously admitted or is later admitted without objection the benefit of the objection is lost."). Further, the State contends because this evidence was previously admitted,

allowing repetition of the evidence by the State in closing arguments was not an abuse of discretion. We agree.

Trice testified on direct examination that he was afraid to testify because the defendant "may be involved with certain activities, gangs, and, you know, I have family . . . that's my first priority is to protect my family." Defendant did not object. However, defendant objected to Durham Police Investigator Anthony Smith's later testimony that Trice was reluctant to testify because he was afraid of gangs in the area. Defendant lost the benefit of his objection because the same evidence was previously admitted without objection. *Whitley, supra.*

"The standard of review for assessing alleged improper closing arguments that fail to provoke timely objection from opposing counsel is whether the remarks were so grossly improper that the trial court committed reversible error by failing to intervene *ex mero motu.*" *See State v. Jones,* 355 N.C. 117, 133, 558 S.E.2d 97, 107 (2002) (citing *State v. Trull,* 349 N.C. 428, 451, 509 S.E.2d 178, 193 (1998), *cert. denied,* 528 U.S. 835, 120 S.Ct. 95, 145 L. Ed. 2d 80 (1999)).

At closing arguments, the State referenced Trice's testimony that he was afraid to testify because "[h]e knew what was going on in the neighborhood." Defendant did not object to this portion of the State's closing argument. We conclude these remarks do not rise to the level of gross impropriety.

The decision by a trial court to overrule an objection to a closing argument is reviewed under an abuse of discretion standard. *Jones,* 355 N.C. at 131, 558 S.E.2d at 106. "In order to assess whether a trial court has abused its discretion when deciding a particular matter, this Court must determine if the ruling 'could not have been the result of a reasoned decision.' " *Id.* at 131, 558 S.E.2d at 106 (quoting *State v. Burrus,* 344 N.C. 79, 90, 472 S.E.2d 867, 875 (1996)). This Court determines first whether the remarks were improper and, second, if so, whether they were prejudicial. *Id.*

Defendant timely objected to the State's reference to gang activity during closing arguments. The prosecutor stated, "Did you hear why Derrick Trice didn't want to come to court? Do you remember that? Because he was afraid for his family because he knew about the drugs and the gangs in there." We conclude the trial court did not abuse its discretion in overruling defendant's objection to these remarks. This statement is an accurate representation of Trice's testi-

mony, which was admitted without objection earlier during trial. This assignment of error is overruled.

### III. Dying Declaration

**[3]** Defendant argues the trial court erred in admitting the victim's statements in the apartment and in the emergency room because the statements do not qualify as dying declarations and are barred under the Confrontation Clause of the Sixth Amendment. We disagree.

### A. Requirements to Admit a Dying Declaration

The standard of review for admission of evidence over objection is whether it was admissible as a matter of law, and if so, whether the trial court abused its discretion in admitting the evidence. *State v. Bell*, 164 N.C. App. 83, 88, 594 S.E.2d 824, 827 (2004). The North Carolina Rules of Evidence permit admission of certain out-of-court statements that would otherwise be inadmissible hearsay statements where such statements meet the following requirements, in pertinent part:

> (b) Hearsay exceptions.—The following are not excluded by the hearsay rule if the declarant is unavailable as a witness:
>
> . . . .
>
> (2) Statement Under Belief of Impending Death.—A statement made by a declarant while believing that his death was imminent, concerning the cause or circumstances of what he believed to be his impending death.

N.C. Gen. Stat. § 8C-1, Rule 804(b)(2) (2007).

The requirements for a dying declaration are: (1) at the time declarant made the statements, the declarant was in actual danger of death; (2) declarant had full apprehension of the danger; (3) death occurred; and (4) declarant, if living, would be a competent witness to testify to the matter. *State v. Richardson*, 308 N.C. 470, 486, 302 S.E.2d 799, 808-09 (1983) (dying declaration properly admitted where declarant repeatedly told police officers "I am dying; somebody please help me").

Defendant argues the victim's statements to the police officers do not satisfy the requirements for a dying declaration because the victim did not believe his death was imminent. Defendant asserts the fact that the victim did not identify Goldston as the shooter indicates he was afraid of retaliation by Goldston, and therefore did not believe his death was imminent.

**STATE v. BODDEN**

[190 N.C. App. 505 (2008)]

We disagree and conclude the trial court did not abuse its discretion in admitting this evidence. The trial court found that about three and a half minutes after the victim called 911, he told his mother that he was going to die. The victim had been shot five times and was bleeding. He was taken to the hospital, received medical treatment in the emergency room, and later died the same day. The circumstances surrounding the victim's statements support the requirements for admission of a dying declaration. *See State v. Hamlette,* 302 N.C. 490, 496-97, 276 S.E.2d 338, 343 (1981) ("[A]dmissibility of [dying] declarations is a decision for the trial judge, and appellate review is limited to the narrow question of whether there is any evidence to show the prerequisites of admissibility.").

Defendant also argues that the victim's statements to the police were conflicting and not credible. The victim first told Officer Cristaldi that the defendant was with the shooter, and later told Officer Keith that defendant shot him. Because the weight and credibility of evidence is for the jury to determine, we overrule any assignment of error on those grounds. *State v. Debnam,* 222 N.C. 266, 270, 22 S.E.2d 562, 565 (1942) (weight and credibility of a dying declaration is for the jury to determine; it may be impeached or corroborated in the same manner as any other statement).

### B. Dying Declaration and the Confrontation Clause

Defendant next argues the victim's statements violated the Confrontation Clause of the Sixth Amendment because they were testimonial in nature under *Davis v. Washington,* 547 U.S. 813, 165 L. Ed. 2d 224 (2006) and *Crawford v. Washington,* 541 U.S. 36, 158 L. Ed. 2d 177 (2004). Defendant asserts that this Court should not find that dying declarations are a historical exception to the Sixth Amendment right of confrontation because *Crawford* rejected reliability as a factor in admitting testimonial statements. The trial court determined that *Crawford* did not bar dying declarations. Defendant's objection was noted for the record.

*Crawford v. Washington* held that the Confrontation Clause of the Sixth Amendment prohibits admission of testimonial statements of a witness who did not appear at trial, unless he was (1) unavailable to testify and (2) the defendant had a prior opportunity to cross-examine the witness. *State v. Lewis,* 361 N.C. 541, 545, 648 S.E.2d 824, 827 (2007) (citing *Crawford,* 541 U.S. at 53-54, 158 L. Ed. 2d at 194).

The State does not contest that the statements at issue were testimonial. Statements are testimonial when circumstances objectively indicate there is no ongoing emergency and the primary purpose of the interrogation is to establish or prove past events that will be relevant later in a criminal prosecution. *Lewis*, 361 N.C. at 546, 648 S.E.2d at 828 (quoting *Davis*, 547 U.S. at 822, 165 L. Ed. 2d at 237). Statements made in response to police questions in the course of interrogation are testimonial. *State v. Sutton*, 169 N.C. App. 90, 96, 609 S.E.2d 270, 275 (2005) (quoting *Crawford*, 541 U.S. at 52, 158 L. Ed. 2d at 193) (police questioning of victim at crime scene held to be testimonial). Here, the victim's statement to Officer Cristaldi after the shooting, while the victim waited for an ambulance, and the statement to Officer Keith at the hospital were both testimonial statements.

*Crawford v. Washington* did not decide whether the Sixth Amendment provides an exception for testimonial statements made as a dying declaration. *Crawford*, 541 U.S. at 56, 158 L. Ed. 2d at 195 n.6 ("Although many dying declarations may not be testimonial, there is authority for admitting even those that clearly are. We need not decide in this case whether the Sixth Amendment incorporates an exception for testimonial dying declarations. If this exception must be accepted on historical grounds, it is *sui generis*." (internal citations omitted)).

Our Supreme Court addressed this issue, prior to *Crawford*, in *State v. Stevens*, 295 N.C. 21, 243 S.E.2d 771 (1978). *See also State v. Penley*, 318 N.C. 30, 40-41, 347 S.E.2d 783, 789 (1986) (concluding defendant's argument that admission of a dying declaration violates the Sixth Amendment is without merit). In *Stevens*, the victim, who was severely burned and was told by his doctor he had a slight chance of surviving his injuries, was questioned by the police at the hospital where he was treated. 295 N.C. at 24-25, 243 S.E.2d at 773-74. He later died from the injuries and his statements were admitted at trial. On appeal, defendant argued that the admission of the dying declaration violated the confrontation clause of the Sixth Amendment. *Id.* at 31, 243 S.E.2d at 777. The Court determined that "the constitutional guaranty of confrontation is not coextensive with the hearsay rule. Further, the public necessity of preventing secret homicides from going unpunished requires the preservation of this uniquely valuable evidence notwithstanding the inability of the defendant to cross-examine his accuser." *Id.* at 32, 243 S.E.2d at 778 (internal citations omitted).

Since the *Crawford* decision, the precise question of whether testimonial dying declarations violate the Sixth Amendment has not been addressed by our Supreme Court. However, in *State v. Calhoun*, 189 N.C. App. 166, 168, —— S.E.2d ——, —— (2008), this Court held that dying declarations do not violate the Sixth Amendment right of confrontation. This Court adopted the reasoning of *People v. Monterroso*, 22 Cal. Rptr. 3d 1, 101 P.3d 956 (Cal. 2004), *writ of cert. denied*, 546 U.S. 834, 163 L. Ed. 2d 89 (2005). *Calhoun*, No. COA07-580, slip op. 9-10 (N.C. App. Mar. 4, 2008). *Monterroso* and cases from other jurisdictions mirror our conclusion that the confrontation clause allows an exception for testimonial dying declarations. *Id.*; *State v. Martin*, 695 N.W.2d 578, 585 (Minn. 2005); *Harkins v. State*, 143 P.3d 706, 711 (Nev. 2006); *People v. Gilmore*, 828 N.E.2d 293, 302 (Ill. App. Ct. 2005); *People v. Durio*, 794 N.Y.S.2d 863, 867 (N.Y. Sup. Ct. 2005). Accordingly, defendant's assignment of error on this ground is overruled.

## C. Forfeiture by Wrongdoing

Defendant also contends that the principle of forfeiture by wrongdoing should not be applied in this case because such application would violate the presumption of innocence standard.

*Crawford* accepted the rule of forfeiture by wrongdoing as a valid exception to the Confrontation Clause. *Crawford*, 541 U.S. at 62, 158 L. Ed. 2d at 199 ("[T]he rule of forfeiture by wrongdoing (which we accept) extinguishes confrontation claims on essentially equitable grounds; it does not purport to be an alternative means of determining reliability."). Some courts have determined the rule of forfeiture by wrongdoing could apply to dying declarations where the victim is made unavailable because of defendant's alleged wrongdoing. *See United States v. Mayhew*, 380 F. Supp. 2d 961, 968 (S.D. Ohio 2005) (finding by a preponderance of the evidence that defendant's wrongdoing caused witness' unavailability, where defendant confessed to shooting the victim); *see also Gonzalez v. State*, 155 S.W.3d 603, 610-11 (Tex. Crim. App. 2004) (concluding that defendant's actions precluded him from excluding the victim's excited utterance statements, whether or not defendant intended to prevent witness from testifying at the time he committed the acts); *People v. Giles*, 55 Cal. Rptr. 3d 133, 146, 152 P.3d 433, 445 (Cal. 2007) (concluding the rule of forfeiture by wrongdoing applies where unavailability of the witness is due to defendant's intentional actions, even if the wrongdoing is that same conduct for which the defendant is being

STATE v. BODDEN

[190 N.C. App. 505 (2008)]

prosecuted), *cert. granted by Giles v. California*, 128 S.Ct. 976, 169 L. Ed. 2d 800 (2008).

However, other jurisdictions have declined to extend the forfeiture exception to dying declarations where the defendant denies killing the declarant, because to do so would violate the presumption of innocence standard. *United States v. Lentz*, 282 F. Supp. 2d 399, 426 (E.D. Va. 2002).

Since we conclude that defendant's statements were properly admitted as dying declarations and those statements do not violate the Sixth Amendment right to confrontation, we need not reach whether the forfeiture by wrongdoing exception applies in this case.

### IV. Motion for Appropriate Relief

[4] Prior to oral arguments, defendant filed a motion for appropriate relief asking this Court to reverse defendant's conviction and order a new trial because the prosecution in Goldston's trial argued an inconsistent theory regarding the victim's belief of impending death.

During closing arguments at the trial of defendant's co-defendant, Goldston, the prosecutor argued to the jury that the victim did not believe he was going to die when he told the officers that defendant shot him. In defendant's trial, the same prosecutor argued to the judge that defendant knew he was dying in order to admit the statements under the dying declaration exception.

Defendant contends the State's inconsistent theories regarding the victim's belief of impending death support defendant's argument that the victim's statements do not satisfy the dying declaration exception. Defendant also argues "making diametrically opposed factual claims" in the two trials violated defendant's due process rights. We disagree.

As to defendant's first contention, the State's theories were permissible inferences interpreting the same evidence. In both trials, the State presented identical evidence of the victim's hearsay statements. While the prosecution adopted a different interpretation of those statements in Goldston's trial, we conclude that the trial court could correctly infer the opposite conclusion: the victim believed he was dying since he had been shot multiple times and told his mother repeatedly he loved her and he was going to die. We reject defendant's argument that the prosecution's theory in a separate trial taints or negates the permissible inferences regarding admissibility of the hearsay statements in defendant's trial.

As to defendant's second contention in his motion for appropriate relief, we have examined the cases cited by defendant and find no due process violation. Defendant relies on the principle that in separate trials of co-defendants, the State may argue alternative but not mutually inconsistent factual theories. *State v. Leggett*, 135 N.C. App. 168, 175, 519 S.E.2d 328, 333 (1999). The State responds to this argument by distinguishing the cases cited by the defendant as pertaining to the core issues in the trial and not a tangential issue such as admission of a hearsay statement. We agree with the State's argument.

In *Leggett*, 135 N.C. App. at 175, 519 S.E.2d at 333, during the trial of Leggett's co-defendant, the State sought to impeach two of the co-defendant's witnesses. Later, the State used the same two witnesses at Leggett's trial. *Id.* Leggett argued that because the State sought to impeach the witnesses at his co-defendant's trial, the State could not in good faith offer those same individuals later as credible witnesses. *Id.* at 175, 519 S.E.2d at 333. This Court disagreed and determined that it was appropriate for the State to argue "alternative but not mutually inconsistent theories at different trials. It was also appropriate for the State to argue credibility of the witnesses to the different juries." *Id.* at 176, 519 S.E.2d at 334. The witnesses' statements were consistent with Leggett's admission that he shot the victim. *Id.* at 175, 519 S.E.2d at 333.

In *State v. Flowers*, 347 N.C. 1, 15, 489 S.E.2d 391, 399 (1997), the defendant, a prison inmate, along with three other men, was charged with stabbing another inmate. Defendant admitted to killing the victim and at the trial of the three co-defendants, defendant testified he acted alone in the killing. *Id.* at 15-16, 489 S.E.2d at 399. At the co-defendants' trial, the prosecution argued the defendant was only a lookout and did not participate in the stabbing. *Id.* at 18, 489 S.E.2d at 401. However, at defendant's trial, the prosecution argued defendant was both the lookout and a participant in the stabbing of the victim. *Id.* Defendant appealed his capital conviction and argued the prosecution's inconsistent positions violated his due process rights. *Id.* at 18-19, 489 S.E.2d at 401. Our Supreme Court determined the prosecution relied upon essentially the same evidence in both trials and the inferences by the prosecution were reasonable based on the evidence. *Id.* at 19-20, 489 S.E.2d at 401-02.

We also find the reasoning in *Parker v. Singletary*, 974 F.2d 1562 (11th Cir. 1992), relied upon by the *Leggett* court, applicable to the case at bar. *Parker* involved three defendants charged with first-degree murder. However, there was uncertainty as to who shot the

victim. At the separate trials of the defendants, the prosecution argued different theories as to who committed the killing. The court held that "it was not improper for the State to take inconsistent positions as long as doing so did not involve the use of necessarily contradictory evidence." *Leggett*, 135 N.C. App. at 176, 519 S.E.2d at 333 (citing *Parker*, 974 F.2d at 1578).

Here, the evidence presented at both trials was identical. The statements are the same and the only inconsistency is in the State's argument about whether the defendant was afraid to name Goldston as the shooter. Defendant concedes that the State did not present different theories regarding defendant's culpability and that the officers' testimony about the victim's statements was identical in both trials. In both trials, the State argued that Goldston and defendant acted in concert to kill the victim. We conclude it was appropriate for the State to argue different inferences regarding the same evidence to different juries.

Defendant also cites cases from other jurisdictions, *Bradshaw v. Stumpf*, 545 U.S. 175, 162 L. Ed. 2d 143 (2005); *Smith v. Groose*, 205 F.3d 1045 (8th Cir. 2000); *Thompson v. Calderon*, 120 F.3d 1045 (9th Cir. 1997), *rev'd on other grounds*, 523 U.S. 538, 140 L. Ed. 2d 728 (1998); *Boyd v. United States*, 908 A.2d 39 (D.C. 2006). We have examined those cases and find them distinguishable.

In *Smith v. Groose*, the Eighth Circuit reversed a thirteen-year-old conviction because the State's use of inconsistent prosecutorial theories violated the inmate's due process rights. 205 F.3d at 1047. The defendant was convicted of felony murder based on the State's theory that the victims were murdered during the commission of a robbery. There was conflicting testimony as to whether the killing was committed by defendant and his co-defendants, or another robber who robbed the victims before the arrival of the defendant and co-defendants. During defendant's trial, the State argued the victims were murdered after defendant arrived to burglarize the house. At the other robber's trial, the State argued the murder occurred before the defendant arrived. Since the State argued factually inconsistent theories regarding the timing of the murder, theories which were based on different evidence, such manipulation of the evidence rendered defendant's trial "fundamentally unfair." *Id.* at 1050-51.

The Ninth Circuit reached a similar result in *Thompson v. Calderon*, 120 F.3d 1045 (9th Cir. 1997). Where the prosecution presented "markedly different and conflicting evidence" at the

two trials of co-defendants for the same crime, the defendant's due process rights were violated. *Id.* at 1056. However, the court also noted that "when there are claims of inconsistent prosecutorial conduct, reversal is not required where the underlying theory remains consistent." *Id.* at 1058-59 (citations and internal quotations omitted). The prosecution presented conflicting theories using different evidence on the motive for the victim's murder, which led to the convictions of two defendants for the same crime under different theories.

In contrast, here, the State did not introduce inconsistent evidence. The inference as to whether the victim was afraid to name Goldston as the shooter was inconsistent with the State's theory in support of admission of the dying declarations in defendant's trial, but this inconsistency was based on the same evidence. This does not rise to the level of fundamental unfairness as in *Groose* or *Thompson.* The Eighth Circuit emphasized that "[t]o violate due process, an inconsistency must exist at the core of the prosecutor's cases against defendants for the same crime." *Groose,* 205 F.3d at 1052. Since the State in this case used the same theory at both trials, that Goldston and defendant acted in concert to kill the victim, we conclude the inconsistency in theories is not at the core of the prosecutor's cases but involves a tangential matter—whether the statements were admissible under the dying declaration hearsay exception in defendant's trial. *See Bradshaw,* 545 U.S. at 187, 162 L. Ed. 2d at 156 (concluding that the prosecutor's use of inconsistent theories as to who was the triggerman in defendant's and co-defendant's trials was immaterial to defendant's conviction for aggravated murder entered on defendant's guilty plea); *Boyd,* 908 A.2d at 51-52 (stating that the presence of inconsistency in prosecutorial theories does not warrant reversal where inconsistency did not exist at the core of the State's case and render the conviction unreliable). Accordingly, defendant's motion for appropriate relief is denied.

V. Conclusion

We conclude the trial court did not commit prejudicial error in admitting the nine-millimeter bullet; that defendant waived his objection to the prosecution witness's testimony that he was afraid of gangs as well as the prosecutor's reference to such testimony in closing arguments; the victim's statements to police were properly admitted under the dying declaration exception to the hearsay rule and the trial court did not err in concluding that dying declarations do not violate the confrontation clause of the Sixth Amendment.

No error.

Judge McGEE concurs.

Judge WYNN concurs in the result.