STATE OF NORTH CAROLINA
v.
MICHAEL WAYNE GOLDSTON, JR.
No. COA08-340
Court of Appeals of North Carolina.
Filed December 16, 2008
This case not for publication
Attorney General Roy Cooper, by Assistant Attorney General, Daniel P. O'Brien for the State.
Franklin E. Wells, Jr., for Defendant.
ARROWOOD, Judge.
Defendant appeals from judgment entered 1 August 2007 convicting him of first degree murder. We find no error.
The evidence tends to show that Michael Goldston (Defendant) and Roy Bodden (Bodden) were known suppliers of drugs to the Cornwallis Road housing projects in Durham, North Carolina. Defendant and Bodden provided crack cocaine to, among others, Latham Smith (Smith) and Nathan Alston (Alston) on the pretext that they would sell it on the streets; however, Smith and Alston often simply used the drugs themselves and sold fake crack cocaine to outsiders to get money to pay Bodden and Defendant. Sometimes, Smith and Alston failed to procure the money to pay Defendant, which provoked Defendant's anger. Smith also allowed Defendant and Bodden to use the house next to his residence to bag their crack cocaine in exchange for crack cocaine for their own use.
On the night of 2 February 2004, Defendant and Bodden visited Smith's home in a black vehicle and confronted Alston about his drug debt. Defendant was frustrated with Alston taking drugs and not paying for them, and Defendant planned to "get" Alston and "kill" him.
On 3 February 2004, Smith saw Alston at a nearby Amoco station talking to Tim Rush (Rush), who was selling drugs for Bodden. Alston received drugs from Rush, and rather than sell the drugs, Alston and Smith then used the drugs together. As dusk approached, Rush began looking for his money from Alston. Bodden then arrived in his car and discovered that Alston had received crack cocaine from Rush without paying for it. Bodden approached Alston by the Amoco and warned him, "you better get my money."
At midnight, Bodden returned in his car with Defendant, and together, they confronted Alston at the Amoco. Smith saw them talking and stated that Defendant said something argumentative, after which Alston began to walk off. Smith witnessed Defendant and Bodden pull guns and shoot toward Alston as he ran away. Alston was fatally shot five times. Before Alston died, he told officers that the shooters were Bodden and the person accompanying Bodden, Defendant.
On 6 July 2004, Defendant was indicted by a grand jury for Alston's murder, and tried before a jury on 24 July 2007. On 1 August 2007, the jury returned a verdict of guilty of first-degree murder, and the court entered judgment sentencing Defendant to life imprisonment without parole. From this judgment, Defendant appeals.

Closing Argument
In Defendant's first argument, he contends that the trial court erred by permitting the prosecutor in his closing statement to say that Alston believed he would survive the gunshot wounds, because the prosecutor took a contrary position at Bodden's earlier trial.
"Prosecutors are granted wide latitude in the scope of their [closing] argument [to the jury]." State v. Small, 328 N.C. 175, 184, 400 S.E.2d 413, 418 (1991) (citing State v. Zuniga, 320 N.C. 233, 253, 357 S.E.2d 898, 911 (1987)). "During a closing argument to the jury an attorney may not become abusive, inject his personal experiences, express his personal belief as to the truth or falsity of the evidence or as to the guilt or innocence of the defendant, or make arguments on the basis of matters outside the record except for matters concerning which the court may take judicial notice." N.C. Gen. Stat. § 15A-1230 (2007). However, "[a]n attorney may, . . . on the basis of his analysis of the evidence, argue any position or conclusion with respect to a matter in issue[.]" Id. "A prosecutor's argument is not improper when it is consistent with the record and does not travel into the fields of conjecture or personal opinion." Small, 328 N.C. at 185, 400 S.E.2d at 418 (citing Zuniga, 320 N.C. at 253, 357 S.E.2d at 911).
The conduct of the arguments of counsel is left to the sound discretion of the trial judge. In order for defendant to be granted a new trial, the error must be sufficiently grave that it is prejudicial. Ordinarily, an objection to the arguments by counsel must be made before verdict, since only when the impropriety is gross is the trial court required to correct the abuse ex mero motu.
State v. Britt, 291 N.C. 528, 537, 231 S.E.2d 644, 651 (1977). Unless the defendant objects, the trial court is not required to interfere ex mero motu unless the arguments "' stray so far from the bounds of propriety as to impede the defendant's right to a fair trial.'" State v. Harris, 308 N.C. 159, 169, 301 S.E.2d 91, 98 (1983). "[S]tatements contained in closing arguments to the jury are not to be placed in isolation or taken out of context on appeal[;] [i]nstead, on appeal we must give consideration to the context in which the remarks were made and the overall factual circumstances to which they referred." State v. Lloyd, 354 N.C. 76, 113, 552 S.E.2d 596, 622 (2001).
In the instant case, Defendant points specifically to the following statement by the prosecution:
The police [came] to the house and he tells them, "I was shot by somebody I don't know and Roy Bodden." Why did he say that? Why would he  why would he not just say Michael Goldston? Why would he not say Michael Goldston shot me? Michael Goldston is the one. Why would he  he's afraid of this man. That's what happened this day. That's the unusual thing that caused somebody to die. This man was called to the scene. When Michael Goldston is there, there is going to be a problem. He had just been shot five times. Well, I'm probably going to survive, we've got EMT's here. I'm going to the hospital. They're taking me to the emergency room. I'm not going to get back out there; he's going to kill me. I'm not going to say he's the one who shot me.
The prosecutor essentially argued to the jury that because Alston did not name Defendant, one might infer that Alston feared retaliation from Defendant if he lived. However, the prosecutor argued at Bodden's trial, in the absence of the jury, that Alston believed he was dying, and therefore, Alston's statements should be admitted under the dying declaration exception to the hearsay rule. In Bodden, this Court stated the following:
[Bodden] argues the victim's statements to the police officers do not satisfy the requirements for a dying declaration because the victim did not believe his death was imminent. Defendant asserts the fact that the victim did not identify Goldston as the shooter indicates he was afraid of retaliation by Goldston, and therefore did not believe his death was imminent.
State v. Bodden, __ N.C. App. __, __, 661 S.E.2d 23, 28 (2008). This Court concluded that the trial court did not abuse its discretion by admitting Alston's statements as dying declarations.
Defendant contends that the statement in the prosecutor's closing argument in this case  that Alston believed he would live  was an impermissible argument not supported by the record and contrary the prosecutor's former position. We find Defendant's argument unconvincing. Defendant cites State v. Jordan, 149 N.C. App. 838, 842, 562 S.E.2d 465, 467 (2002), to support his argument; however, we find Jordan distinguishable from the instant case. In Jordan, the prosecutor "clearly traveled `outside the record' in asking the jury to consider the excluded transcripts when reaching its verdict." Jordan, 149 N.C. App. at 843, 562 S.E.2d at 468 (emphasis added). Here, the inference that Alston might have believed he would live, and therefore, that he feared retaliation from Defendant, is logical and supported by the evidence. In fact, the inference was argued by Bodden in his appeal to this Court. The fact that the Bodden Court held that Alston's statements were not improperly admitted as dying declarations does not preclude other inferences from the evidence, such as the inference that Alston did not name Defendant because he feared retaliation should he survive the attack.
We conclude that the prosecutor's argument was made "on the basis of his analysis of the evidence[,]" was "consistent with the record[,]" and did "not travel into the fields of conjecture or personal opinion." Small, 328 N.C. at 185, 400 S.E.2d at 418. This assignment of error is overruled.

Admission of Evidence
In Defendant's second argument, he contends that the trial court erred by admitting the following evidence: (1) the nine-millimeter projectile found in mailboxes between the Amoco and Alston's apartment, and (2) the testimony of Nicholas Alston, Nathan Alston's brother, that Defendant came to his house several months after the murder and threatened him. We disagree with both contentions.
"'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." N.C. Gen. Stat. § 8C-1, Rule 401 (2007). Generally, all relevant evidence is admissible. N.C. Gen.Stat. § 8C-1, Rule 402 (2007). "[I]n a criminal case every circumstance calculated to throw any light upon the supposed crime is admissible and permissible." State v. Bruton, 344 N.C. 381, 386, 474 S.E.2d 336, 340 (1996) (quoting State v. Collins, 335 N.C. 729, 735, 440 S.E.2d 559, 562 (1994)). "The weight of such evidence is for the jury." State v. Smith, 357 N.C. 604, 614, 588 S.E.2d 453, 460 (2003) (quoting State v. Lytch, 142 N.C. App. 576, 580, 544 S.E.2d 570, 573 (2001)).
"[R]elevant . . . evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." N.C. Gen. Stat. § 8C-1, Rule 403 (2007). "Whether to exclude evidence under Rule 403 is a matter left to the sound discretion of the trial court." State v. Stager, 329 N.C. 278, 315, 406 S.E.2d 876, 897 (1991) (citation omitted). "[A] trial court's rulings on relevancy[,] [however] . . . are not reviewed under the abuse of discretion standard applicable to Rule 403[;] [but] such rulings are given great deference on appeal." State v. Wallace, 104 N.C. App. 498, 502, 410 S.E.2d 226, 228 (1991).
In the instant case, the day after the shooting, the police canvassed the area around the Amoco station and recovered a nine-millimeter bullet near the mailbox of a nearby apartment building, which was approximately halfway between the Amoco and Alston's apartment. Three round, three-inch in diameter pipes, which were set in concrete, supported the mailboxes. The bullet was found resting on the concrete pad next to the middle pipe. (T456) The bullet came from a semi-automatic weapon, but it was not the same weapon that fired the bullets removed from Alston's body. The three bullets recovered from Alston's body were either .38 or .357 caliber bullets. This notwithstanding, two projectiles went completely through Alston's body, and no evidence indicated what caliber of weapon fired the bullets.
In considering whether the nine-millimeter bullet was admissible evidence, the trial court reasoned that "there's evidence that . . . [the] bullet was found along the path that was taken by . . . the victim[.]" Furthermore, the trial court stated that "[t]here is evidence that the defendant was standing at . . . that entrance way to the apartments . . . [and] that he was riding in a car that stopped along there." The testimony of Pam Page and Smith further corroborating the admissibility of the nine-millimeter bullet: Pam Page testified that she previously saw Defendant with a handgun, and Smith saw Defendant and Bodden pull out guns and fire at Alston in the direction the bullet was discovered.
Notwithstanding the evidence supporting the admissibility of the nine-millimeter bullet, this Court noted in State v. Bodden, __ N.C. App. __, __, 661 S.E.2d 23, 26 (2008), that "[e]ven if the admission of the nine-millimeter bullet was error, in order to reverse the trial court, the appellant must establish the error was prejudicial." See N.C. Gen. Stat. § 15A-1443(a) (2007). We arenot convinced that, had the evidence relating to a nine-millimeter bullet been excluded, a different result would have been reached at trial. As the Court in Bodden concluded, the State presented overwhelming evidence that Defendant acted in concert with Bodden.
We conclude that the admission of the nine-millimeter bullet does not amount to prejudicial error. This assignment of error is overruled.
Defendant also argues that the testimony of Alston's brother, Nicholas Alston (Nicholas) was erroneously admitted. Nicholas testified that three or four months after the murder of his brother, Defendant blocked Nicholas' car by parking behind it at Nicholas' residence. Defendant had not visited the residence prior to this occasion, and Nicholas had never told Defendant where his house was located. A man named "Seeds" got out of the passenger seat of Defendant's vehicle and patted his hip, as though he possessed a gun. Nicholas perceived this as a threat, and thereafter, he resultantly moved out of Durham and away from Defendant.
"[A]n attempt by a defendant to intimidate a witness in an effort to prevent the witness from testifying or to induce the witness to testify falsely in his favor is relevant to show the defendant's awareness of his guilt." State v. Mason, 337 N.C. 165, 171, 446 S.E.2d 58, 61 (1994) (quoting State v. Hicks, 333 N.C. 467, 485, 428 S.E.2d 167, 177 (1983)). Under the law of Mason and Hicks, we believe that Nicholas' testimony was relevant to show Defendant's awareness of his guilt, and therefore, the trial court did not err by admitting the testimony. This assignment of error is overruled.

Hearsay
In Defendant's next argument, he contends that the trial court erred in admitting the statements of Tim Rush through Detective Smith, because the statements were hearsay. We disagree.
The North Carolina Rules of Evidence define "hearsay" as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." N.C. Gen. Stat. § 8C-1, Rule 801(c) (2007). Out-of-court statements that are offered for purposes other than to prove the truth of the matter asserted are not considered hearsay.State v. Call, 349 N.C. 382, 409, 508 S.E.2d 496, 513 (1998). Specifically, statements are not hearsay if they are made to explain the subsequent conduct of the person to whom the statement was directed. State v. Coffey, 326 N.C. 268, 282, 389 S.E.2d 48, 56 (1990).
Defendant relies on State v. Canady, 355 N.C. 242, 559 S.E.2d 762 (2002) for the proposition that the prosecutor in the instant case crossed the boundary of providing an explanation for Detective Anthony Smith's (Detective Smith) subsequent actions by soliciting Rush's prior statements from Detective Smith. In Canady, the detective's "testimony provided more than a mere explanation of his subsequent actions. [The detective] provided details contained in [the declarant's] statement including how defendant broke into the victims' house through a window, went into the bathroom with arifle, shot one of the victims, and fled with a bag of money." Canady, 355 N.C. at 249, 559 S.E.2d at 766 (2002). "Moreover, the State [in Canady] relied upon [the detective's] recitation of [the declarant's] detailed statement during the State's closing argument." Id. The Court in Canady concluded that "the State relied on [the detective's] testimony as substantive evidence of the details of the murders and to imply defendant had given a detailed confession of his alleged crimes." Id. The Court held that "[b]y using [the detective's] testimony in this manner, the State undoubtedly sought to prove the truth of the matter asserted." Id.
This case is distinguishable from Canady. In the instant case, Tim Rush was interviewed by Detective Smith, who testified at trial regarding a photographic lineup:
Q: Did [Tim Rush] make any positive identifications of the persons in those lineups?
A: Yes.
Q: Who did he identify?
A: He identified Michael Goldston and Roy Bodden.
[Defense Counsel]: Objection. Move to strike. Hearsay.
Court: Overruled.
Q: Now, you spoke to Mr. Rush for about three hours, is that right?
A: Yes.
Q: And later on, pursuant to your investigation, what did you do after speaking with Mr. Rush?
A: Basically continued following up on information that was provided  at that point in time I knew that there was a positively second person involved in this incident.
Detective Smith also stated that "Lathan Smith's statement is consistent with Tim Rush's statement." We believe that the foregoing statements of Tim Rush made by Detective Smith were not elicited for the truth of the matter asserted; rather, the statements explain the course of Detective Smith's investigation after "positively [identifying the] second person"  the Defendant. The court did not err in overruling Defendant's objection and admitting Tim Rush's statements to Detective Smith. See, e.g., State v. Alexander, 177 N.C. App. 281, 283-85, 628 S.E.2d 434, 435-36 (2006). This assignment of error is overruled.

Second Degree Murder
Defendant next argues that the trial court erred in failing to submit second degree murder as a possible verdict to the jury. We disagree.
Primarily, we note that Defendant did not request an instruction on second degree murder. At the charge conference, defense counsel stated, "Your Honor, in this matter, we will not be seeking an instruction on second degree murder. It is our understanding, from the presentation of evidence and the representations of the State, that this matter is either a case of first-degree murder . . . or not guilty." Because of Defendant's failure to object or request an instruction at trial, Defendant argues plain error on appeal. See N.C. R. App. P. 10(c)(4); State v. Parker, __ N.C. App. __, __, 653 S.E.2d 6, 10 (2007).
A "defendant is entitled to an instruction on a lesser included offense if the evidence would permit a jury rationally to find him guilty of the lesser offense and acquit him of the greater." Keeble v. United States, 412 U.S. 205, 208, 36 L.E.2d 844, 847 (1973). "The trial court may refrain from submitting the lesser offense to the jury only where the `evidence is clear and positive as to each element of the offense charged' and no evidence supports a lesser-included offense." State v. Lawrence, 352 N.C. 1, 19, 530 S.E.2d 807, 819 (2000) (quoting State v. Peacock, 313 N.C. 554, 558, 330 S.E.2d 190, 193 (1985)). "The determining factor is the presence of evidence to support a conviction of the lesser included offense." State v. Boykin, 310 N.C. 118, 121, 310 S.E.2d 315, 317 (1984). The trial court must instruct on a lesser included offense when "there is evidence from which the jury could find that defendant committed the lesser included offense [unless] the State's evidence is positive as to every element of the crime charged and there is no conflicting evidence relating to any element of the crime charged." Boykin, 310 N.C. at 121, 310 S.E.2d at 317.
In order to convict a defendant of premeditated, first-degree murder, the State must prove: (1) an unlawful killing; (2) with malice; (3) with the specific intent to kill formed after some measure of premeditation and deliberation. See N.C. Gen. Stat. § 14-17 (2007); State v. Hamby, 276 N.C. 674, 678, 174 S.E.2d 385,387 (1970). "Murder in the second degree is the unlawful killing of a human being with malice but without premeditation and deliberation." State v. Flowers, 347 N.C. 1, 29, 489 S.E.2d 391, 407 (1997).
Our Supreme Court has stated that "the rule for determining whether an instruction for the lesser-included offense of second-degree murder is required as follows:"
If the State's evidence is sufficient to satisfy its burden of proving each element of first-degree murder, including premeditation and deliberation, and there is no evidence other than defendant's denial that he committed the crime to negate these elements, the trial court should not instruct the jury on second-degree murder.
State v. Hyatt, 355 N.C. 642, 659-660, 566 S.E.2d 61, 73 (2002) (quoting State v. Conaway, 339 N.C. 487, 514, 453 S.E.2d 824, 841,(1995); citingState v. Leazer, 353 N.C. 234, 237, 539 S.E.2d 922, 925 (2000)); see also Flowers, 347 N.C. at 29, 489 S.E.2d at 407.
The State's evidence showed the following in support of a theory of premeditation and deliberation: (1) Defendant was "tired" of Alston's "bull____"[;] (2) Defendant stated, "I will kill you"; (3) Bodden warned Alston that he should quickly give Defendant the money for the drugs; (4) Defendant and Bodden went to the Amoco armed with handguns; (5) Defendant, Bodden and Alston had a "heated" and "very tense" argument, after which Alston attempted to run away; (6) Defendant and Bodden then fired their weapons at Alston; (7) Alston was struck with five shots.See State v. Larry, 345 N.C. 497, 514, 481 S.E.2d 907, 917 (1997) (stating that carrying loaded weapons supports an inference of premeditation and deliberation); State v. Jones, 346 N.C. 704, 714, 487 S.E.2d 714, 721 (1997) (stating that threats to kill are evidence of premeditation and deliberation); State v. Taylor, 337 N.C. 597, 607, 447 S.E.2d 360, 367; State v. Chapman, 359 N.C. 328, 376, 611 S.E.2d 794, 828 (2005) (stating that multiple shots provide evidence of premeditation and deliberation). The evidence was sufficient to establish that the shooting was committed by Defendant with premeditation and deliberation. Defendant presented no evidence to negate the State's evidence of premeditation and deliberation.
In Defendant's brief on appeal, Defendant's solitary statement upon which he argues a second degree murder jury instruction was appropriate is the following: "Lathan Smith testified that the shooting occurred during or immediately after an argument between Nat Alston, Roy Bodden and Michael Goldston." Smith provided the following testimony:
A: Mr. Goldston said something to him. I don't know what it was. It was just still argumentative, you know, really, I couldn't tell you the sentence, what it was, you know, and so, Nat started walking off. And I didn't see  even though I saw it, I just didn't see them both pull the guns out. When I looked, the guns were out.
Q: Who pulled the guns out?
A: [Defendant] and Roy.
Q: And what happened at that point?
A: Nat turned to run down the sidewalk, and they just started shooting at him.
Q: And what did you do?
A: I ran back a little bit, toward up in the yard because I didn't, you know, they don't  bullets ain't got nobody's name on them.
Solomon, 340 N.C. at 222, 456 S.E.2d at 785 is instructive with regard to the argument between Alston and Defendant. Solomon states that an argument between the defendant and the victim, without other evidence showing that "the defendant was incapable of deliberating his actions[,]" does not support the lesser included offense of second degree murder.
To demonstrate that plain error has occurred, Defendant must show that the error was a "fundamental error, something so basic, so prejudicial, so lacking in its elements that justice cannot have been done." State v. Odom, 307 N.C. 655, 660, 300 S.E.2d 375, 378 (1983). This, Defendant has not done. Because there was no evidence upon which the jury could find defendant guilty of second-degree murder, and because Defendant did not negate any of the elements of first-degree murder, including the elements of premeditation and deliberation, there was no basis upon which the trial court could submit an instruction on second-degree murder. Thus, the trial court did not err in failing to instruct on second degree murder. This assignment of error is overruled.

Ineffective Assistance of Counsel
In Defendant's final argument, he contends that he was deprived of his right to effective assistance of counsel because (1) his attorney failed to continue to object to the allegedly inadmissible hearsay statements of the declarant, Tim Rush, and (2)his attorney failed to request an instruction on second degree murder. We disagree.
A defendant's right to counsel includes the right to the effective assistance of counsel. McMann v. Richardson, 397 U.S. 759, 771, 25 L. Ed. 2d 763, 773 (1970). When a defendant attacks his conviction on the basis that counsel was ineffective, he must show that his counsel's conduct fell below an objective standard of reasonableness. Strickland v. Washington, 466 U.S. 668, 686, 80 L. Ed. 2d 674, 693 (1984). In order to meet this burden, the defendant must satisfy a two part test.
First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.
Id. at 686, 80 L. Ed. 2d at 693.
Because the statements of Tim Rush were not hearsay, in that they were not offered for the truth of the matter asserted, but rather, to show Detective Smith's course of investigation, and because a second degree murder instruction could not have been given to the jury in this case had counsel for Defendant requested the instruction, we cannot say that counsel's performance was so "deficient" that he was not functioning as the "'counsel' guaranteed the defendant by the Sixth Amendment." Id. For the foregoing reasons, we conclude that the Defendant had a fair trial, free from prejudicial error.
No Error.
Judges WYNN and BRYANT concur.
Report per Rule 30(e).