An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA25-358

Filed 17 December 2025

Wake County, No. 18 CR 207577-910

STATE OF NORTH CAROLINA

v.

MARK BRICHIKOV

Appeal by Defendant from judgment entered 23 July 2024 by Judge Rebecca W. Holt in Wake County Superior Court. Heard in the Court of Appeals 19 November 2025.

> *Attorney General Jeff Jackson, by Special Deputy Attorney General Kristin J. Uicker, for the State.*

> *Appellate Defender Glenn Gerding, by Assistant Appellate Defender David S. Hallen, for the Defendant.*

WOOD, Judge.

Mark Brichikov ("Defendant") appeals from judgment entered following a jury verdict finding him guilty of second-degree murder. On appeal, Defendant contends the trial court erred by admitting double-hearsay testimony regarding an alleged prior assault. After careful review of the record, we discern no prejudicial error in

the trial court.

## I. Factual and Procedural Background

On 22 April 2018, the Raleigh Police Department responded to a 911 call from the Knights Inn in Raleigh. Officers found Nadia Brichikov's ("Nadia") body in the doorway of room 241. Nadia was Defendant's wife.

Based on the investigation, Officers discovered Nadia had a significant history of drug abuse with a recent incarceration and overdose. When police arrived at the scene, drug paraphernalia, including numerous syringes, a crack pipe, a tourniquet, and a white powdery substance littered the motel room. The furniture was in disarray and a chair lay between Nadia's legs. There was blood and blood spatter throughout the room. Nadia's body was severely battered, and her face was unidentifiable. Officers found Defendant's identification card, book bag, shorts, shirt, and wallet inside the room.

Text message records revealed Defendant and Nadia had exchanged numerous text messages in the hours leading up to her death. They discussed their desire for one another, as well as Defendant's concerns for Nadia. According to his texts, Defendant thought Knights Inn was a dangerous place and he did not want her doing drugs. They both expressed fears about the other's sexual infidelity. Early on the morning of 21 April 2018, Nadia sent a message to Defendant asking him to call her. When he did not respond as soon as expected, Nadia sent another text accusing him of having "a new girl again." Nadia next texted that perhaps they did not need to talk

to each other as she planned to go to Florida since her North Carolina charges had been dropped. Defendant responded later to her that he would be off work between five and six that evening and expressed a desire to be intimate with her.

Video footage from Knights Inn on 21 April 2018 showed Defendant had initially arrived at the motel around 10:30 p.m. then showed him going in and out of the room a few times until he entered the room for the last time at 3:43 a.m.. Between 10:30 p.m. and 3:43 a.m., each time he exited Nadia was visible on the video footage, alive and unharmed. However, at 4:09 a.m., Defendant opened the door, left the room, jumped a fence, and ran to a nearby gas station. This time Nadia could be seen in the video lying on the floor, moving, and trying to get up for approximately three minutes, then motionless. Defendant eventually went to his workplace and stole a truck, an iPad, and credit cards. He drove to Wilmington, where he was arrested the following day.

On 2 December 2019, Defendant was tried for murder in Wake County Superior Court. On 11 December 2019, the jury returned a verdict of guilty of second-degree murder as well as three aggravating factors. The trial court sentenced Defendant to 338 to 418 months of imprisonment. Defendant appealed.

On 18 January 2022, this Court held the trial court's refusal to give Defendant's requested jury instruction constituted prejudicial error, vacated the judgment, and remanded the issue to the trial court for a new trial. *State v. Brichikov*, 281 N.C. App. 408, 422, 869 S.E.2d 339, 349 (2022), (*"Brichikov I"*). On 16

December 2023, our Supreme Court affirmed this Court's decision in *Brichikov I*. *State v. Brichikov*, 383 N.C. 543, 559, 881 S.E.2d 103, 115 (2022).

On 15 July 2024, the matter came on for a new trial in Wake Couty Superior Court. In addition to the significant evidence described above, the State presented testimony from Donna Duke, a family friend of Nadia and Defendant. During closing arguments, Defendant's attorney admitted that Defendant had assaulted Nadia and left her in the motel without seeking any assistance for her but exhorted the jury to find he had done so without malice. On 23 July 2024, the jury returned a guilty verdict for second-degree murder. The trial court sentenced Defendant to 338 to 418 months of imprisonment with credit for 2,283 days in confinement prior to entry of this judgment. Defendant appealed. We now once again turn our attention to Defendant's issue on appeal, *Brichikov II*.

## II. Analysis

Defendant raises one issue on appeal: the trial court erred by admitting double-hearsay testimony by Donna Duke ("Duke") regarding an alleged prior assault. At trial, Duke testified that in 2014 or 2015, Cathy, a friend of Duke and Nadia, and Nadia had called her together and told her that Nadia's face was "beaten really bad." Duke stated that she could hear Nadia crying during the call. Duke testified that she offered to let Nadia stay with her, but Nadia never came. Defendant contends Duke's testimony was hearsay within hearsay and was prejudicial to him such that he should receive a new trial. We disagree.

Assuming *arguendo* Duke's testimony constituted inadmissible hearsay, we are not convinced Defendant was prejudiced by its admission. Both our Supreme Court and our General Assembly have held, "hearsay is not always so prejudicial as to require a new trial. Rather, the defendant must show 'a reasonable possibility that, had the error in question not been committed, a different result would have been reached at . . . trial . . . .'" *State v. Hinnant*, 351 N.C. 277, 291, 523 S.E.2d 663, 672 (2000) (quoting N.C. Gen. Stat. § 15A–1443(a) (1999)) (cleaned up). Further, "[i]f the other evidence presented was sufficient to convict the defendant, then no prejudicial error occurred." *State v. Bodden*, 190 N.C. App. 505, 510, 661 S.E.2d 23, 26 (2008).

Such is the case here. Defendant objects only to the single statement that he previously had beaten Nadia's face badly. Defendant contends this portion of Duke's testimony is prejudicial because any evidence of malice "tipped the scales in favor of a verdict of second-degree murder." Defendant's contention is misplaced. The necessary measure is not whether the objected to content provided any evidence but that the content had such an effect to cause a reasonable possibility of changing the outcome at trial. While the statement may tend to demonstrate Defendant had previously beaten Nadia, it was not the only evidence of prior beatings. The record reveals the trial court admitted Duke's prior uncontested testimony that Nadia had called her on a previous occasion "and said that he had beaten her." Further, there was ample evidence apart from a history of previous beatings from which the jury likely found malice.

The trial court's instructions to the jury on malice, to which Defendant neither objected at trial nor raises now on appeal, includes:

> Malice, much like intent, is a mental attitude seldom provable by direct evidence. It must ordinarily be proved by circumstances from which it may be inferred. Malice means not only hatred, ill will, or spite, as it is ordinarily understood, to be sure that is malice; but it also means that condition of mind which prompts a person to take the life of another intentionally, or to intentionally inflict serious bodily harm which proximately results in another's death without just cause, excuse, or justification.
>
> *If the State proves beyond a reasonable doubt that the defendant intentionally killed Nadia Brichikov with a deadly weapon or intentionally wounded Nadia Brichikov with a deadly weapon that proximately caused her death, you may infer, first, that the killing was unlawful; and second, that it was done with malice*, but you are not compelled to do so.
>
> You may consider this, along with all other facts and circumstances, in determining whether the killing was unlawful and whether it was done with malice. If the killing was unlawful and was done with malice, the defendant would be guilty of second-degree murder.

Additionally, the trial court gave the following instruction regarding the use of hands as a deadly weapon:

> You may find, but are not required to find, that the [D]efendant's hands were used as a deadly weapon. A deadly weapon is a weapon which is likely to cause death or serious injury. In determining whether the instrument was a deadly weapon, you should consider the nature of the instrument, the manner in which it was used, and the size and strength of the defendant as compared to the alleged victim.

It is well settled "[m]alice is presumed where the defendant intentionally assaults another with a deadly weapon, thereby causing the other's death." *State v. Lail*, 251 N.C. App. 463, 474, 795 S.E.2d 401, 409–10 (2016) (quoting *State v. McNeill*, 346 N.C. 233, 238, 485 S.E.2d 284, 287 (1997). Additionally, our Courts consistently have held "bodily appendages such as a defendant's hands and arms can, depending upon the manner in which and the circumstances under which they are used, constitute deadly weapons in applying a wide variety of statutory provisions . . . ." *State v. Steen*, 376 N.C. 469, 485, 852 S.E.2d 14, 25 (2020); *see also State v. Allen*, 193 N.C. App. 375, 378, 667 S.E.2d 295, 298 (2008); *State v. Grumbles,* 104 N.C. App. 766, 769, 411 S.E.2d 407, 409 (1991); *State v. Rogers,* 153 N.C. App. 203, 211, 569 S.E.2d 657, 663 (2002).

In the case *sub judice*, the medical examiner testified that Nadia's face was essentially "free floating" and "no longer attached to her skull" as a result of her injuries. He further testified facial bones are not easily broken and fractures of this severity are more typically seen in "falls from a substantial height" or "a motor vehicle crash." Additionally, Officer Walls of the Raleigh Police Department testified Defendant had injuries to his hands and knees consistent with the indication that he had straddled Nadia and beat her as she lay on the floor. Additionally, Nadia was five feet two inches tall and weighed 127 pounds, relatively small when compared to Defendant, a strong man who did manual labor for a living. Finally, Roger Simmons,

Defendant's cellmate, testified Defendant admitted he had a "love/hate" relationship with Nadia and was "pounding" her because he believed she had been having affairs. We conclude the State presented competent evidence sufficient to support the inference that Defendant used his hands as a deadly weapon and that his actions were done with malice.

Because there was "other evidence presented" of malice, sufficient to convict the defendant of second-degree murder, we hold the trial court did not commit prejudicial error. *State v. Bodden*, 190 N.C. App. 505, 510, 661 S.E.2d 23, 26 (2008).

### III.    Conclusion

For the foregoing reasons, we conclude the trial court did not prejudicially err in admitting testimony regarding an alleged prior assault. We hold Defendant received a fair trial free from prejudicial error.


NO PREJUDICAL ERROR.

Judges CARPENTER and GORE concur.

Report per Rule 30(e).