STATE OF NORTH CAROLINA v. MARAITHEON E. PINCHBACK

No. COA99-1160

(Filed 7 November 2000)

## 1. Identification of Defendant— armed robbery—finding of fact—insufficient opportunity to view perpetrator

The trial court's finding of fact in a robbery with a firearm case that the victim had an ample and sufficient opportunity to view the passenger of another vehicle who took the victim's wallet in an ABC parking lot at gunpoint is not supported by competent evidence even though the trial court based its finding on evidence that the street lights were on, the victim was in the passenger's presence for approximately 30 minutes, and the passenger did not wear any masks or other concealing clothing, because: (1) the only evidence regarding the victim's ability to

STATE v. PINCHBACK

[140 N.C. App. 512 (2000)]

view the passenger is the victim's testimony that the passenger was in sight for approximately five minutes and the victim was unable to view the passenger during this time because it was dark; and (2) the victim also testified the passenger forced him to lie face down on the ground and the victim never made eye-to-eye contact with him.

## 2. Identification of Defendant— armed robbery—finding of fact—victim's degree of attention to perpetrator

The trial court's finding of fact in a robbery with a firearm case that the victim's degree of attention to the identity of the passenger of another vehicle who took the victim's wallet in an ABC parking lot at gunpoint was strong and focused is not supported by competent evidence, because: (1) the victim's description of the commission of the crime was that he was able to focus on the appearance of the driver and not the passenger; and (2) the victim testified that the passenger forced him to lay face down on the ground and that the victim never made eye-to-eye contact with the passenger.

## 3. Identification of Defendant— armed robbery—finding of fact—reliability of victim's description to police

The trial court's finding of fact in a robbery with a firearm case that the victim's description given to the police was reliable is not supported by competent evidence because although defendant does fit the victim's description of a black male with short hair who was wearing black clothing, the substantial discrepancy in the victim's description of the passenger's height and weight render the victim's identification unreliable.

## 4. Identification of Defendant— armed robbery—finding of fact—victim's level of certainty of identification

The trial court's finding of fact in a robbery with a firearm case that the victim stated at the time of the identification that he could not make a positive identification of the passenger to show the victim's level of certainty at the time of the identification is supported by the victim's testimony and is therefore binding.

## 5. Identification of Defendant— armed robbery—finding of fact—time between commission of crime and identification

The trial court's finding of fact in a robbery with a firearm case that the identification took place within one hour to show the time that elapsed between the commission of the crime and

the identification is supported by the officer's testimony and is therefore binding.

### 6. Identification of Defendant— pretrial—suggestive nature—substantial likelihood of misidentification—error not harmless beyond a reasonable doubt

The trial court erred in a robbery with a firearm case by denying defendant's motion to suppress the victim's pretrial identification, because: (1) there is a substantial likelihood that the victim misidentified defendant when weighing the suggestiveness of the identification procedure against the facts that the victim's description of the height and weight of the passenger of another vehicle who took the victim's wallet in an ABC parking lot at gunpoint differed significantly from defendant's actual height and weight; and (2) the State failed to meet its burden under N.C.G.S. § 15A-1443(b) to demonstrate this error was harmless beyond a reasonable doubt.

Appeal by defendant from judgment dated 25 February 1999 by Judge A. Leon Stanback, Jr. in Caswell County Superior Court. Heard in the Court of Appeals 12 September 2000.

*Attorney General Michael F. Easley, by Assistant Attorney General Bruce S. Ambrose, for the State.*

*Theresa K. Pressley, for defendant-appellant.*

GREENE, Judge.

Maraitheon E. Pinchback (Defendant) appeals a judgment dated 25 February 1999, finding him guilty of robbery with a firearm.

The evidence shows that on 9 May 1998, Christopher Penn (Penn) was sitting in his vehicle by himself at an ABC store in Yanceyville, North Carolina. Penn was waiting in the parking lot for his sister and sister-in-law to return from their dates, and he was supposed to meet them in the parking lot at approximately 11:00 p.m. While Penn was sitting in his vehicle, a red Toyota Tercel pulled into the parking lot. Someone in the Tercel then blew the vehicle's horn, and Penn stepped out of his vehicle and approached the driver's side door of the Tercel. Two men were seated in the front seats of the Tercel. The man seated in the driver's side of the Tercel asked Penn whether he knew "a guy by the name of Tim." Penn responded, " 'No, I don't.' " The driver of the vehicle then stated, " 'Well, he sells gats.' " Penn responded, " 'No,

I don't. I don't even know him.' " Penn "almost started back to [his] vehicle" when the passenger of the Tercel exited the Tercel and walked toward Penn. The passenger had a gun in his hand, and he told Penn to give him his wallet and all of his money. After the passenger took Penn's wallet, the passenger walked over to Penn's vehicle and looked in the dashboard, seat, and floorboard. The passenger then told Penn to "l[ie] down on the ground face down" and, while Penn was still on the ground, the passenger returned to the Tercel and the robbers drove away in the Tercel.

Approximately ten minutes after the robbery, Penn's sister arrived at the ABC store and Penn told her that he had been robbed. Penn's sister called the Yanceyville Police Department from her cellular telephone to report the robbery. Approximately five minutes later, Steve Perkins (Perkins), a sergeant with the Yanceyville Police Department, arrived at the ABC parking lot. Penn told Perkins he had been robbed by "two black males . . . riding in a red Toyota Tercel." Penn stated that "both [robbers] had on black clothing and [had] real short almost bald hairstyle[s]." Perkins notified other police officers over the radio to "lookout" for two black males driving a "small four-door red vehicle."

Approximately thirty minutes later, Perkins received notification that a police officer in Danville, Virginia, had stopped a vehicle that fit the description given by Penn. The vehicle was stopped at a Kentucky Fried Chicken (KFC) in Danville, which is an approximately twenty-five minute drive from the ABC store. After receiving this notification, Perkins drove Penn to Danville in his patrol vehicle to identify the robbers. Perkins testified that when he and Penn arrived at the KFC, the two suspects were standing in the KFC parking lot. Perkins told Penn to remain in the patrol vehicle and to observe the two suspects, who were standing next to a red Tercel. The Tercel was parked approximately twenty to twenty-five feet from the patrol vehicle and was surrounded by several law enforcement vehicles. Perkins left the patrol vehicle to speak to a Danville police officer. Perkins testified that when he returned to the patrol vehicle Penn told him "he was quite certain that that was the two that just robbed him at the ABC [s]tore." Penn, however, testified that he told Perkins, " 'I can give a proper identification on the driver but not the passenger.' " Penn did not give a positive identification of Defendant as the passenger at trial.

Defendant made a motion at trial to suppress Perkin's testimony that Penn identified Defendant at the KFC as the passenger in the

robbery. The trial court held a *voir dire* on this motion during which Penn testified regarding his identification of Defendant at the KFC. Penn testified that when Perkins arrived at the ABC store, Penn told Perkins: " 'I can't make a positive identification of the passenger but I can give . . . a positive identification of the driver.' " Penn also told Perkins that the passenger was wearing black clothing and had short hair or was bald. Penn stated the passenger was in his view for approximately five minutes while looking in Penn's car; however, it was dark in the ABC parking lot. Upon their arrival at the KFC, Penn told Perkins that the two men standing next to the Tercel were the men who had robbed him. Penn then told Perkins that he could identify the driver; however, he could not identify the passenger because he "never made eye-to-eye contact with him." Penn testified Defendant, a black male, did have similar hair and complexion to the passenger and also was wearing a black shirt; nevertheless, he was unable to make a positive identification of Defendant as the passenger. Penn testified that at the time of the robbery, he described the passenger as approximately 5 feet, nine inches tall, weighing approximately 160 pounds, and having a "medium" build.

Perkins testified during *voir dire* that the ABC parking lot was "pretty well lit up" at the time of the robbery. He also testified that when he arrived at the KFC with Penn within one hour of the robbery, Penn told him that he was " 'positive' " Defendant was one of the men who had robbed him. Information contained in notes Perkins made subsequent to Defendant's arrest, however, indicate Defendant was 6 feet, 1 inch tall and at the time of his arrest he weighed 230 pounds. Perkins would have characterized Defendant at the time of his arrest as having a "heavy" or "muscular" build.

Subsequent to the *voir dire* hearing, the trial court made the following findings of fact:

> The Court finds that . . . the lighting conditions at the crime scene near the ABC Store in Yanceyville when this robbery happened in the nighttime, that the street lights were on. That . . . Penn[] was in the presence of the two robbers for approximately 30 minutes. That he testified he was able to look in the face of the driver of the robber's vehicle. That he was closer—he was very close at that time to the driver. That the passenger in the automobile was the person with the firearm that got out of the car but he could not make a positive identification of that passenger with the gun other than to say that he was a black male, had a black T-shirt on and close-cut hair. He was approximately a height of

approximately 5/9 and weight was approximately 165 or so. That the degree of the attention of the victim was great. That the perpetrator's [sic] of the robbery did not wear any masks or other concealing clothing.

That after the robbery [Penn] was taken to Danville within one hour. At that time he was shown the two subjects who had been stopped in the red Toyota Tercel automobile that he identified as being the car being operated by the robbers. At that time he saw the two individuals and made an identification. . . .

. . . .

The Court also finds that the pretrial identification procedure involving a show-up did not violate any of . . . [D]efendant's rights to due process of law, and was reliable and was not the product of a substantial likelihood of any misidentification, given the totality of the circumstances surrounding the robbery and the identification of the perpetrators, the witness's opportunity to view the accused and observe the physical characteristics of the accused and the automobile was ample and sufficient to gain a reliable impression at the time of the crime. That the witness's degree of attention was strong and focused. That his description given to the police was reliable.

The trial court then made the following conclusion of law: "[T]he show-up at the [KFC] premises in Danville, Virginia was suggestive but it was not so unnecessarily or impermissibly suggestive as to render any identification inadmissible." Accordingly, the trial court denied Defendant's motion to suppress Penn's pretrial identification.

---

The issues are whether: (I) the trial court's findings of fact regarding Defendant's motion to suppress Penn's pretrial identification of Defendant are supported by competent evidence;[1] and (II) the trial court's findings of fact which are supported by competent evidence support its conclusion of law that Penn's identification of

---

1. Although there is a dispute in the evidence regarding whether Penn actually made a pretrial identification of Defendant, the trial court found as fact that Penn "made an identification" at the KFC. Because this finding is supported by Perkins' testimony that Penn identified Defendant at the KFC, we are bound by this finding of fact. *See State v. Freemen*, 313 N.C. 539, 544, 330 S.E.2d 465, 470 (1985) (trial court's findings of fact are binding on appeal when supported by competent evidence).

Defendant "was not so unnecessarily or impermissibly suggestive as to render [the] identification inadmissible."[2]

"Identification evidence must be excluded as violating a defendant's right to due process where the facts reveal a pretrial identification procedure so impermissibly suggestive that there is a very substantial likelihood of irreparable misidentification." *State v. Harris*, 308 N.C. 159, 162, 301 S.E.2d 91, 94 (1983). Therefore, even when the procedures used at a pretrial identification are suggestive, the pretrial identification is nevertheless admissible unless under the totality of the circumstances "there is a substantial likelihood of irreparable misidentification." *State v. Pigott*, 320 N.C. 96, 99, 357 S.E.2d 631, 633 (1987). In determining whether this substantial likelihood exists, the trial court must consider the following factors:

1) The opportunity of the witness to view the criminal at the time of the crime;

2) the witness'[s] degree of attention;

3) the accuracy of the witness'[s] prior description;

4) the level of certainty demonstrated at the confrontation; and

5) the time between the crime and the confrontation.

*Id.* at 99-100, 357 S.E.2d at 633-34. A trial court's findings of fact regarding these factors are binding on appeal when supported by competent evidence. *Freeman*, 313 N.C. at 544, 330 S.E.2d at 470.

I

**[1]** In this case, the trial court made findings regarding each of the factors set forth in *Pigott*.[3] First, the trial court found that Penn's "opportunity to view the [passenger] and observe the physical char-

---

2. Defendant argues in his brief to this Court that his motion to suppress should have been granted because "Defendant did not voluntarily go with police to a show-up . . . [and] [t]here is no mention anywhere that Defendant was advised of his right to counsel." Defendant, however, did not raise this issue during the trial court's hearing on Defendant's motion to suppress, and the trial court did not rule on this issue in its order denying Defendant's motion to suppress. Accordingly, this issue is not properly before this Court. *See* N.C.R. App. P. 10(b)(1) ("In order to preserve a question for appellate review, a party must have presented to the trial court a timely request, objection or motion, stating the specific grounds for the ruling the party desired the court to make.").

3. The trial court concluded and the State concedes in its brief to this Court that the pretrial identification procedure was "suggestive." We, therefore, do not address this issue.

acteristics of the [passenger] . . . was ample and sufficient to gain a reliable impression at the time of the crime." The trial court based this finding on evidence "that the street lights were on," Penn was in the passenger's presence "for approximately 30 minutes," and the passenger "did not wear any masks or other concealing clothing." This evidence, however, does not support a finding that Penn had an opportunity to actually *view* the passenger at the time of the crime. Rather, the only evidence regarding Penn's ability to view the passenger is Penn's testimony that the passenger was in his sight for approximately five minutes, and he was unable to view the passenger during this time because it was dark. Penn also testified the passenger forced him to lie face down on the ground, and Penn "never made eye-to-eye contact with him." The trial court's finding of fact that Penn had an "ample and sufficient" opportunity to view the passenger is, therefore, not supported by competent evidence.

**[2]** Second, the trial court found as fact that "the witness's degree of attention [to the identity of the passenger] was strong and focused." The State argues in its brief to this Court that this finding is "supported by . . . Penn's description of the crime and of his behavior." Penn's description of the commission of the crime, however, was that he was able to focus on the appearance of the driver and not the passenger, the passenger forced Penn to lie face down on the ground, and Penn "never made eye-to-eye contact with [the passenger]." The trial court's finding of fact that "the witness's degree of attention [to the identity of the passenger] was strong and focused" is, therefore, not supported by competent evidence.

**[3]** Third, the trial court found that Penn's "description given to the police was reliable." The evidence shows Penn described the passenger to Perkins as 5 feet, 9 inches tall and weighing approximately 160 pounds. Perkins testified, however, that the notes he made subsequent to Defendant's arrest indicate Defendant was 6 feet, 1 inch tall and at the time of the arrest weighed 230 pounds. Although Defendant does fit Penn's description of a black male with short hair who was wearing black clothing, the substantial discrepancy in Penn's description of the passenger's height and weight render Penn's identification unreliable. *See State v. Richardson*, 328 N.C. 505, 512, 402 S.E.2d 401, 405 (1991) (identification "reliable" when witness's description accurately described defendant's clothing, bag, and approximate height and weight). The trial court's finding of fact that Penn's "description given to the police was reliable" is, therefore, not supported by competent evidence.

**[4]** Fourth, the trial court found Penn stated at the time of the identification that "he could not make a positive identification of th[e] passenger." This finding of fact regarding Penn's "level of certainty" at the time of the identification is supported by Penn's testimony that he was not able to make a positive identification of the passenger. This finding of fact, therefore, is binding on this Court. *See Freeman*, 313 N.C. at 544, 330 S.E.2d at 470.

**[5]** Finally, the trial court found the identification took place "within one hour." This finding regarding the time that elapsed between the commission of the crime and the identification is supported by Perkin's testimony that the identification took place within an hour of the crime. This finding is, therefore, binding on this Court. *See id.*

## II

**[6]** When applying the factors from *Pigott* to determine whether there is a "substantial likelihood of irreparable misidentification," the factors must be weighed against "the corrupting effect of the suggestive procedure itself." *Pigott*, 320 N.C. at 100, 357 S.E.2d at 634.

In this case, the trial court's only findings of fact supported by competent evidence are that Penn "could not make a positive identification of th[e] passenger" and the identification took place "within one hour" of the robbery. Further, the evidence, which was not controverted, shows Penn did not have an opportunity to view the passenger at the time of the robbery, Penn's degree of attention to the identity of the passenger was minimal because Penn was unable to view the passenger, and Penn's description of the passenger was not reliable. Although Penn was able to identify the passenger as a black male with short hair who was wearing black clothing, Penn's description of the passenger's height and weight differed significantly from Defendant's actual height and weight. Weighing these factors against the suggestiveness of the identification procedure, "there is a substantial likelihood" that Penn misidentified Defendant. The trial court's denial of Defendant's motion to suppress Penn's pretrial identification, therefore, was error. Further, as the admission of Penn's pretrial identification at trial violated his right to due process under the Constitution of the United States, *see Neil v. Biggers*, 409 U.S. 188, 198, 34 L. Ed. 2d 401, 410-11 (1972) (likelihood of misidentification violates defendant's right to due process), the burden is upon the State to demonstrate this error was harmless beyond a reasonable

doubt, N.C.G.S. § 15A-1443(b) (1999). The State has not met this burden.[4] Accordingly, Defendant is entitled to a new trial.

Because the issues raised by Defendant's additional assignments of error are unlikely to recur at a new trial, we do not address them.

Reversed.

Judges EDMUNDS and SMITH concur.

---

4. The State does not argue in its brief to this Court that any error in allowing into evidence Penn's pretrial identification of Defendant is harmless beyond a reasonable doubt.