STATE OF NORTH CAROLINA v. JAQUAN RASEAN WEATHERS

No. COA11-1132

(Filed 20 March 2012)

**Constitutional Law—confrontation clause—doctrine of wrong-doing—forfeiture of right to confrontation**

The trial court did not abuse its discretion in a first-degree murder and kidnapping case by denying defendant's motion for a mistrial where a witness was excused from testifying further after suffering an extreme emotional reaction on the witness stand and defendant had no opportunity to cross-examine the witness. The doctrine of wrongdoing was applicable in light of the overwhelming evidence regarding defendant's efforts to intimidate the witness to keep him from testifying and their effect on the witness.

Appeal by Defendant from judgments entered 11 March 2011 by Judge Hugh B. Lewis in Mecklenburg County Superior Court. Heard in the Court of Appeals 26 January 2012.

*Attorney General Roy Cooper, by Special Deputy Attorney General Norma S. Harrell, for the State.*

*Paul F. Herzog for Defendant.*

STEPHENS, Judge.

Defendant Jaquan Rasean Weathers appeals from judgments entered upon his convictions for the first-degree murder of Leroy Hodge, Jr. (known as "Rico") and three related counts of kidnapping. The evidence at trial pertinent to the issues on appeal tended to show

the following: The victim's house was commonly the site of illegal drug sales and use, particularly crack cocaine. On the night of the murder, Johnny Wilson had been selling crack from the victim's home before leaving to visit a friend. When Wilson returned, he entered the apartment and saw Defendant waving a gun around. Defendant was upset and angry because he believed someone had taken his drugs. As Wilson stood in the kitchen, he heard a gunshot from the bedroom. When Wilson entered the bedroom, he saw Rico lying on the floor and Defendant standing with his back to the wall.

Wilson was one of the State's chief witnesses at trial. During his direct examination on 28 February 2011, Wilson was shaking while testifying about Defendant's involvement in the murder. When he returned to the stand on 2 March, he "began to testify, but within a few minutes became distraught and indicated he did not wish to make any other statements." Wilson was shaking more noticeably than he had been on 28 February, and laid his head down on top of the witness stand and began to cry. Wilson became even more upset when a young man dressed in street clothes entered the courtroom. When asked if he had been threatened, Wilson responded, "I don't even want to answer that question."

In light of Wilson's extreme emotional state, the trial court excused Wilson from testifying further. At the prosecution's request, the court called a hearing on the issue of whether the doctrine of forfeiture applied to the circumstances and whether Wilson's testimony would remain on the record. Defendant argued that the appropriate remedy was to declare a mistrial because he had been denied the right to confront Wilson. By order entered 11 March 2011, the court directed that Wilson's testimony remain on the record. In the order, the trial court found that Defendant had "committed wrongful acts that were undertaken with the intention of preventing potential witnesses from testifying and has in fact caused a potential witness, Johnny Wilson, to refuse to testify."

## Discussion

Defendant's sole argument on appeal is that the trial court erred in denying his motion for a mistrial.[1] Defendant contends that his actions toward Wilson were not designed to prevent Wilson from

---

1. Defendant also argues that the court erred in denying his motion to strike Wilson's testimony, but our review of the record reveals no motion to strike by Defendant. Because a party must present a "timely request, objection, or motion" to the trial court and obtain a ruling thereon in order to preserve an issue for appeal, we do not address this portion of Defendant's argument. *See* N.C.R. App. P. 10(a)(1).

testifying and, in any event, were not egregious enough to trigger for-
feiture of his constitutional right to confront witnesses against him.
We disagree.

In considering whether the trial court erred in refusing to grant a
mistrial, this Court employs an abuse of discretion standard.

> The decision to grant or deny a mistrial lies within the sound
> discretion of the trial court and is entitled to great deference
> since the trial court is in a far better position than an appellate
> court to determine the effect of any misconduct on the jury.
> Absent an abuse of discretion, therefore, the trial court's ruling
> will not be disturbed on appeal. An abuse of discretion occurs
> when a ruling is manifestly unsupported by reason, which is to
> say it is so arbitrary that it could not have been the result of a
> reasoned decision.

*State v. Taylor*, 362 N.C. 514, 538, 669 S.E.2d 239, 260 (2008) (cita-
tions and quotation marks omitted).

The Sixth Amendment to the United States Constitution provides
that "[i]n all criminal prosecutions the accused shall enjoy the
right . . . to be confronted with the witnesses against him[.]" U.S.
Const. amend. VI. However, certain wrongful actions by an accused
can result in forfeiture of his Confrontation Clause rights. *See
Giles v. California*, 554 U.S. 353, 359, 171 L. Ed. 2d 488, 495 (2008).
Under the doctrine of forfeiture by wrongdoing, "one who obtains the
absence of a witness by wrongdoing forfeits the constitutional
right to confrontation." *Davis v. Washington*, 547 U.S. 813, 833,
165 L. Ed. 2d 224, 244 (2006). "The rule of forfeiture by wrongdoing . . .
extinguishes confrontation claims on essentially equitable
grounds[.]" *Crawford v. Washington*, 541 U.S. 36, 62, 158 L. Ed. 2d 177,
199 (2004). Thus,

> when defendants seek to undermine the judicial process by
> procuring or coercing silence from witnesses and victims, the
> Sixth Amendment does not require courts to acquiesce. While
> defendants have no duty to assist the State in proving their
> guilt, they do have the duty to refrain from acting in ways that
> destroy the integrity of the criminal trial system.

*Davis*, 547 U.S. at 833, 165 L. Ed. 2d at 244.

As codified in Federal Rule of Evidence 804(b)(6), forfeiture
occurs when the defendant has " 'engaged or acquiesced in wrongdo-

ing that was intended to, and did, procure the unavailability of the declarant as a witness.' " *Giles*, 554 U.S. at 367, 171 L. Ed. 2d at 500 (quoting Fed. Rule Evid. 804(b)(6)). The intent requirement "means that the [doctrine] applies only if the defendant has in mind the particular purpose of making the witness unavailable." *Id.*

The North Carolina Rules of Evidence have no similar provision, and the doctrine of forfeiture has not been addressed directly in our State's case law.[2] Here, the trial court followed the approach adopted by Utah state courts in *Utah v. Poole* which, as in federal case law, focused on the defendant's intent to prevent the witness from testifying. 232 P.3d 519, 522 (Utah 2010).[3] The trial court made several findings regarding the overwhelming evidence of Defendant's wrongful acts and his intent. First, Wilson disclosed that, as they were being transported to the courthouse for trial, Defendant threatened to kill Wilson and his family. A detention officer also testified that she heard Defendant threaten Wilson. Second, in a taped interview with homicide detectives and assistant district attorneys, Wilson repeatedly expressed his concern that his life and the lives of his family members were in jeopardy.

Finally, Defendant made several phone calls that evidenced his intent to intimidate Wilson. In one call to his grandmother, Defendant repeatedly referred to Wilson as "nigger" and stated he would "straighten this nigger out[,]" a reference to intimidating Wilson to keep him quiet. Also during the phone calls, Defendant joked about the "slick moves" that he used to prevent Wilson from testifying. In other calls, Defendant instructed several acquaintances (including "Greasy," "Mad Dog," and others) to come to court to intimidate Wilson while he was testifying. One of the parties Defendant spoke to said he would be in court on the morning of 2 March 2011. On that date, Wilson, who had already been hesitant and fearful on the stand, became even more emotional and "broke down" when he saw a young man dressed in street clothes indicative of gang attire enter the courtroom.

Defendant argues that, because Wilson did not know about these phone calls, "[t]heir relevance is marginal at best" in determining the

---

2. Our Supreme Court has only briefly mentioned the doctrine in dicta. *See State v. Lewis*, 361 N.C. 541, 648 S.E.2d 824 (2007).

3. The Utah court used a preponderance of the evidence standard, *id.* at 525, while the trial court here applied the higher standard of clear, cogent, and convincing evidence. Because employing a higher standard of proof benefits Defendant, he does not assert any abuse of the court's discretion on this point and we see none.

reason Wilson chose to discontinue his testimony. We disagree. The calls were highly relevant in determining whether to apply the doctrine of forfeiture by wrongdoing in that they showed Defendant (1) wanted to intimidate Wilson and prevent him from testifying; (2) formed a plan to intimidate Wilson by having Defendant's acquaintances appear in the court room while Wilson was on the stand; and (3) believed his "slick moves" would be effective in intimidating Wilson.

Much of Defendant's argument on appeal centers on the correctness of the court's finding of fact concerning the presence of a spectator at trial described as "a young Afro-American male dressed in urban attire (low hanging baggie pants and hoodie) indicative of gang attire." There was no dispute at trial that such a spectator entered the courtroom on 2 March. The trial judge recalled that the young man had entered while Wilson was still on the stand, while defense counsel believed Wilson had already been taken out of the courtroom. The judge's memory of the timing was competent evidence and supports this finding of fact. Further, the remaining findings, including Defendant's threat to harm Wilson and his family and his bragging about doing so, along with Wilson's obvious fear, were more than sufficient to establish Defendant's efforts and intent to intimidate Wilson.

We likewise reject Defendant's contention that application of the doctrine was improper because Wilson never testified that he chose to remain silent out of fear of Defendant. It would be nonsensical to require that a witness *testify against a defendant* in order to establish that the defendant has intimidated the witness into *not* testifying. Put simply, if a witness is afraid to testify against a defendant in regard to the crime charged, we believe that witness will surely be afraid to finger the defendant for having threatened the witness, itself a criminal offense. *See* N.C. Gen. Stat. § 14-226 (2011). Defendant cites no authority for the proposition that a trial court cannot make reasonable inferences about the cause of a witness's refusal to testify based upon the facts and circumstances before it.

As Defendant notes, this Court has interpreted United States Supreme Court case law as demonstrating a "reluctance to uphold forfeiture of a criminal defendant's U.S. Constitutional rights, except in egregious circumstances." *State v. Wray*, ___N.C. App.___, ___, 698 S.E.2d 137, 140-41 (2010). The evidence here could hardly be more egregious. We see no error in the trial court's determination that Defendant forfeited his right to confront Wilson.

In light of the overwhelming evidence regarding Defendant's acts, the intention behind them, and their effect on Wilson, as well as the court's thoughtful, well-reasoned analysis thereof, the trial court did not abuse its discretion in refusing to grant a mistrial.

NO ERROR.

Judges STROUD and BEASLEY concur.