DIETZ, Judge.
 

 *197
 
 Defendant Marvin Miller appeals his conviction for killing his estranged wife and severely wounding her boyfriend. He argues that the State violated his Confrontation Clause rights at trial when a law enforcement officer described to the jury what Miller's wife told him during an earlier domestic abuse investigation.
 

 As explained below, we agree that the State violated Miller's Confrontation Clause rights. The victim's statements to the officer in that earlier domestic violence incident were made after she fled from Miller in her car and called police from a safe location. Moreover, the purpose of the officer's questions was to determine what happened, not what was happening. As a result, those statements were testimonial in nature.
 

 Although Miller was tried for that earlier domestic violence offense, the record in this case does not indicate that Miller had an opportunity to cross-examine his wife about the challenged statements at the time. To the contrary, Miller's wife asked the State to drop the charges and sat with him at the trial, which suggests Miller may have had no need to cross-examine her in that earlier proceeding; in any event, because the record contains no transcript of the proceeding, this Court has no way to know.
 

 Likewise, the record contains no indication (and no findings from the trial court) that Miller killed his wife to prevent her from testifying about that earlier incident. Thus, under controlling U.S. Supreme Court precedent, the mere fact that the victim is unavailable
 
 because
 
 Miller killed her does not mean Miller forfeited his Confrontation Clause rights.
 

 *198
 
 Finally, because this is a constitutional error, the burden is on the State to show that the error was harmless beyond a reasonable doubt. The State did not argue harmless error on appeal and, as a result, abandoned any harmless error argument. We therefore vacate the trial court's judgments and remand for further proceedings.
 

 *698
 

 Facts and Procedural History
 

 On 1 September 2013, Defendant Marvin Miller entered the home of his estranged wife, Lakeshia Wells, and found her and her boyfriend, Marcus Robinson, naked. Miller attacked Wells and Robinson with a knife, wounding Robinson and killing Wells.
 

 A grand jury indicted Miller for first degree murder, attempted first degree murder, and burglary and the case went to trial. The jury acquitted Miller on the burglary charge but convicted him of first degree murder and attempted first degree murder. The court arrested judgment on the attempted first degree murder conviction and sentenced Miller to life in prison without the possibility of parole. Miller timely appealed.
 

 Analysis
 

 Miller argues that the trial court violated his constitutional rights under the Confrontation Clause by permitting a police officer to testify to statements made by the victim. As explained below, we agree that the State violated Miller's Sixth Amendment rights.
 

 Miller properly preserved his Confrontation Clause argument at trial; we thus review it
 
 de novo
 
 on appeal.
 
 State v. Graham
 
 ,
 
 200 N.C. App. 204
 
 , 214,
 
 683 S.E.2d 437
 
 , 444 (2009). The Confrontation Clause of the Sixth Amendment bars admission of testimonial statements of a witness who did not appear at trial, unless the witness was unavailable to testify and the defendant had a prior opportunity to cross-examine the witness.
 
 State v. Bodden
 
 ,
 
 190 N.C. App. 505
 
 , 513,
 
 661 S.E.2d 23
 
 , 28 (2008). "Statements are testimonial when circumstances objectively indicate there is no ongoing emergency and the primary purpose of the interrogation is to establish or prove past events that will be relevant later in a criminal prosecution."
 
 Id.
 
 at 514,
 
 661 S.E.2d at 28
 
 . Among the factors that indicate a statement is testimonial are the fact that there was no immediate threat to the witness and that the law enforcement officer was seeking to determine "what happened" rather than "what is happening."
 
 State v. Lewis
 
 ,
 
 361 N.C. 541
 
 , 547,
 
 648 S.E.2d 824
 
 , 829 (2007).
 

 Applying these factors, we hold that the challenged statements were testimonial in nature. In 2012, roughly a year before the crimes alleged in this case, Miller's estranged wife, Lakeshia Wells, called police. She
 
 *199
 
 explained that she had been held against her will by Miller inside her apartment for more than two hours. Eventually, Wells was able to leave the apartment, where Miller remained. Wells got in her car, drove away, and called police.
 

 Officer E.R. Kato of the Greensboro Police Department responded to the call and met Wells near her apartment building. Wells told the officer that Miller held her against her will and things had "escalated to a physical struggle." The officer accompanied Wells back to her apartment "to just generally clear the apartment and make sure there was nobody in there that shouldn't be there" and then he left and obtained a warrant for Miller's arrest. At the trial in this case, Officer Kato testified to what Wells told him when he met her outside her apartment, including her statement that Miller had confined her in the apartment and that she had a physical struggle with Miller.
 

 Wells's statements about the confinement and altercation with Miller were "testimonial" and thus subject to the Confrontation Clause. First, there was no immediate threat or ongoing emergency when the officer spoke to Wells.
 
 See
 

 Lewis
 
 ,
 
 361 N.C. at 547
 
 ,
 
 648 S.E.2d at 828-29
 
 . The officer's own testimony demonstrates that Wells had left the scene of the crime in her car and called police from a safe location away from Miller.
 

 Second, according to the officer's own testimony, his questions were focused on "what happened" rather than "what is happening."
 
 See
 
 id.
 

 To be sure, as the State argues, the officer might have sought to gather information about Miller's location, because Miller was still inside the apartment without permission. But the statements about which the officer testified were not ones addressing Miller's current whereabouts-for example, responses to questions such as "where did you last see Miller?" or "what room of the apartment was he in?" Instead, the statements to which the officer testified at trial concerned past events-information necessary
 
 *699
 
 to obtain a warrant to arrest Miller for his actions:
 

 Q. And did she indicate anything else happening between the two of them?
 

 A. She advised that during the time he was there, which was approximately two hours, that they argued. The argument became heated at one point, I believe she stated, and that it escalated to a physical struggle as well, and that after it had deescalated to no longer being physical, she was able to exit the apartment and leave the area in her vehicle.
 

 *200
 
 Q. And did you notice any physical marks or any marks of a physical-
 

 A. I don't recall physical injury, but I did recall a tear in a shirt, a tear and what appeared to be stress marks, pull marks, to-if I recall, it was a cotton shirt, which would have been consistent with a struggle.
 

 These statements to the officer plainly addressed what happened, not what was happening, and they were not made during any immediate threat or ongoing emergency. Thus, we agree with Miller that these statements were testimonial in nature and thus subject to the Confrontation Clause.
 

 The State contends that, even if Wells's statements were testimonial, their admission did not violate the Confrontation Clause because Miller had an opportunity to cross-examine Wells on these issues at an earlier trial for criminal domestic trespass.
 
 See
 

 Bodden
 
 ,
 
 190 N.C. App. at 513
 
 ,
 
 661 S.E.2d at 28
 
 . But we have no way to know that Wells actually gave this testimony at the earlier trial because the record does not contain any transcripts or evidence from that proceeding. This is fatal for the State's argument because (rather obviously) Miller cannot confront Wells about statements she made if she never actually made them. Indeed, there are some suggestions in the record that Wells did
 
 not
 
 provide this testimony at the earlier trial. For example, the record indicates that Wells asked the State to drop those earlier charges against Miller, and that she sat with Miller during that earlier trial. Simply put, the appellate record does not contain any indication that Wells made the challenged statements at this earlier trial or that Miller had an opportunity to cross-examine her about them. Accordingly, we reject this argument.
 

 The State next contends that Miller forfeited his Confrontation Clause rights when he killed Wells.
 
 See generally
 

 State v. Weathers
 
 ,
 
 219 N.C. App. 522
 
 , 524-25,
 
 724 S.E.2d 114
 
 , 116 (2012). But again, the record (or, more precisely, the trial court's ruling on the Confrontation Clause issue) does not support this contention. The mere fact that Miller killed Wells is not enough for forfeiture. The U.S. Supreme Court has held that forfeiture applies "only when the defendant engaged in conduct
 
 designed
 
 to prevent the witness from testifying."
 
 Giles v. California
 
 ,
 
 554 U.S. 353
 
 , 359,
 
 128 S.Ct. 2678
 
 ,
 
 171 L.Ed.2d 488
 
 (2008). Thus, forfeiture requires some showing that the defendant killed the witness at least in part to prevent the witness from testifying.
 
 See
 

 Weathers
 
 ,
 
 219 N.C. App. at 525
 
 ,
 
 724 S.E.2d at
 
 116 ;
 
 United States v. Jackson
 
 ,
 
 706 F.3d 264
 
 , 268 (4th Cir. 2013).
 

 *201
 
 The trial court did not make a finding that Miller killed Wells to prevent her from testifying about this earlier domestic violence incident, and we find no indication in the record that this was Miller's motivation, even in part. Thus, the record does not support the State's argument that Miller forfeited his Confrontation Clause rights by killing Wells to prevent her from testifying.
 

 Having determined that the State violated Miller's rights under the Confrontation Clause, we next turn to whether the error prejudiced the trial. This is a constitutional error and thus is prejudicial and requires a new trial unless it is harmless beyond a reasonable doubt. N.C. Gen. Stat. § 15A-1443(b). Importantly, "[b]ecause this error is one with constitutional implications,
 
 the State
 
 bears the burden of proving that the error was harmless beyond a reasonable doubt."
 
 State v. Bell
 
 ,
 
 359 N.C. 1
 
 , 36,
 
 603 S.E.2d 93
 
 , 116 (2004) (emphasis added).
 

 The State has abandoned any argument on harmlessness because it did not raise the issue in its appellate brief.
 
 See
 

 In re L.I.
 
 ,
 
 205 N.C. App. 155
 
 , 162,
 
 695 S.E.2d 793
 
 , 799 (2010) ;
 

 *700
 

 State v. Pinchback
 
 ,
 
 140 N.C. App. 512
 
 , 520-21 & n.4,
 
 537 S.E.2d 222
 
 , 227 & n.4 (2000). We acknowledge that there is overwhelming evidence of Miller's guilt in this case and that the challenged testimony from the officer, relaying the victim's statements from an earlier, unrelated domestic violence incident, almost certainly played little if any role in the jury's decision to convict.
 

 But this Court routinely finds that criminal defendants abandoned prejudicial error arguments by failing to adequately argue them on appeal.
 
 See
 
 ,
 
 e.g.
 
 ,
 
 State v. Tatum-Wade
 
 ,
 
 229 N.C. App. 83
 
 , 94-95,
 
 747 S.E.2d 382
 
 , 390 (2013). It is no injustice to hold the State, with its vast and virtually unlimited resources, to the same standard as a criminal defendant, whose life or liberty is at stake. Accordingly, we hold that the State violated Miller's Sixth Amendment right to confront the witnesses against him and that this violation prejudiced his trial. We vacate the trial court's judgments and remand for further proceedings consistent with this opinion. Because we vacate and remand on this issue, we need not reach Miller's other arguments on appeal.
 

 Conclusion
 

 For the reasons explained above, we vacate the trial court's judgments and remand for further proceedings.
 

 VACATED AND REMANDED.
 

 Judges DILLON and TYSON concur.