IN THE SUPREME COURT OF NORTH CAROLINA

No. 217PA17

Filed 8 June 2018

STATE OF NORTH CAROLINA

v.

MARVIN EVERETTE MILLER, JR.

On discretionary review pursuant to N.C.G.S. § 7A-31 of a unanimous decision of the Court of Appeals, ___ N.C. App. ___, 801 S.E.2d 696 (2017), vacating judgments entered on 8 April 2016 by Judge Edwin G. Wilson, Jr., in Superior Court, Guilford County, and remanding for further proceedings. On 17 August 2017, the Supreme Court allowed defendant's conditional petition for discretionary review as to additional issues. Heard in the Supreme Court on 13 March 2018.

*Joshua H. Stein, Attorney General, by David J. Adinolfi II, Special Deputy Attorney General, for the State-appellant/appellee.*

*Mark Montgomery for defendant-appellee/appellant.*

ERVIN, Justice.

The issue before this Court in this case is whether the Court of Appeals erred by vacating the judgments entered by the trial court based upon defendant, Marvin Everette Miller, Jr.'s convictions for first-degree murder and attempted first-degree murder on the grounds that certain evidence had been admitted in violation of defendant's constitutional right to confront the State's witnesses against him. After

careful consideration of the record in light of the applicable law, we reverse the decision of the Court of Appeals and remand this case to the Court of Appeals for consideration of defendant's remaining challenges to the trial court's judgments.

On 31 August 2013, Lakeshia Wells and her boyfriend, Marcus Robinson, celebrated Ms. Wells's birthday with family and friends at the Shriners nightclub in Greensboro. At some point after 2:00 a.m. on 1 September 2013, Ms. Wells and Mr. Robinson returned to Ms. Wells's apartment on Bulla Street. After the couple entered Ms. Wells's bedroom and had sexual intercourse, Ms. Wells told Mr. Robinson that she had heard something and asked Mr. Robinson to investigate the source of the noise. Upon determining that nothing was amiss on the lower floor of the apartment, Mr. Robinson returned to the upper floor, where he saw an individual, whom he later identified as defendant, standing in the hallway holding a knife.[1]

After being seen by Mr. Robinson, defendant, who was Ms. Wells's estranged husband, entered Ms. Wells's bedroom, where an altercation occurred. As Mr. Robinson ran back downstairs in order to retrieve his cell phone and car keys, he was followed by defendant,[2] who cut Mr. Robinson's face before Mr. Robinson escaped

---

[1] Investigating officers found blood and other items containing defendant's DNA in Ms. Wells's apartment during the course of the ensuing investigation.

[2] Although defendant admitted that he had entered Ms. Wells's apartment and that he had stabbed Mr. Robinson, he claimed to have believed that Ms. Wells would be out of town, expressed surprise that Mr. Robinson was present in Ms. Wells's apartment, stated that he was enraged that both Ms. Wells and Mr. Robinson were naked, and asserted that Ms. Wells was "fine when [he] left."

through the back door while wearing only a tank top. Once he managed to get outside of Ms. Wells's apartment, Mr. Robinson called the police. Following the arrival of investigating officers, Mr. Robinson was transported to the hospital, where he was treated for his injuries.

Detective Benjamin Mitchell of the Greensboro Police Department responded to a call regarding a stabbing at a Bulla Street address at 3:28 a.m. on 1 September 2013. Upon encountering Mr. Robinson, Officer Mitchell learned that someone had broken into Ms. Wells's apartment, that the intruder had begun stabbing the occupants, and that investigating officers needed to check on Ms. Wells, who was apparently still inside the apartment. As he entered the apartment, Officer Mitchell did not observe any signs of a forcible intrusion; however, he did determine that "some type of disturbance had occurred in the kitchen." For that reason, Officer Mitchell and other investigating officers began to search the apartment for both intruders and Ms. Wells. Upon making his way to the second floor, Officer Mitchell discovered the dead body of Ms. Wells at the top of the stairs.

On 10 December 2012, approximately nine months before Ms. Wells was killed, Officer E.R. Kato of the Greensboro Police Department responded to a call at Ms. Wells's Bulla Street apartment relating to a domestic dispute. According to Officer Kato, Ms. Wells stated that she had been held in her apartment against her will for a period of two hours by her estranged husband. Although Officer Kato did not recall having observed any signs that Ms. Wells had sustained a physical injury, he noticed

a tear and stress marks in the cotton shirt that Ms. Wells was wearing. At that point, Officer Kato accompanied Ms. Wells to her apartment and checked the premises to make sure that defendant had not remained at that location. Subsequently, defendant was charged with and convicted of domestic criminal trespass.

On 4 November 2013, the Guilford County grand jury returned bills of indictment charging defendant with first-degree burglary, attempted first-degree murder, and first-degree murder. The charges against defendant came on for trial before the trial court and a jury at the 4 April 2016 criminal session of the Superior Court, Guilford County. On 8 April 2016, the jury returned verdicts acquitting defendant of first-degree burglary and first-degree murder on the basis of malice, premeditation, and deliberation and convicting defendant of attempted first-degree murder and first-degree murder on the basis of the felony murder rule using either first-degree burglary, attempted murder, or assault with a deadly weapon inflicting serious injury as the predicate felony. Based upon the jury's verdicts, the trial court arrested judgment in the case in which defendant had been convicted of attempted first-degree murder and entered a judgment sentencing defendant to a term of life imprisonment without the possibility of parole based upon defendant's first-degree murder conviction. Defendant noted an appeal to the Court of Appeals from the trial court's judgments.

In seeking relief from the trial court's judgments before the Court of Appeals, defendant argued that the trial court had erred by overruling his confrontation-based

objection to the introduction of Officer Kato's testimony concerning the statements that Ms. Wells made to him on 10 December 2012. According to defendant, the statements that Ms. Wells had made to Officer Kato were testimonial in nature given the absence of any ongoing emergency at the time those statements were made, citing *State v. Bodden*, 190 N.C. App. 505, 514, 661 S.E.2d 23, 28 (2008) (explaining that "[s]tatements are testimonial when circumstances objectively indicate there is no ongoing emergency and the primary purpose of the interrogation is to establish or prove past events that will be relevant later in a criminal prosecution"), *appeal dismissed and disc. rev. denied*, 363 N.C. 131, 675 S.E.2d 660, *cert. denied*, 558 U.S. 865, 130 S. Ct. 175, 175 L. Ed. 2d 111 (2009). In addition, defendant argued that the forfeiture doctrine did not extinguish defendant's confrontation rights given the absence of any evidence tending to show that defendant had killed Ms. Wells for the purpose of preventing her from testifying about the domestic criminal trespass case that resulted from the 10 December 2012 incident, citing *Giles v. California*, 554 U.S. 353, 361, 128 S. Ct. 2678, 2684, 171 L. Ed. 2d 488, 497 (2008) (explaining "that unconfronted testimony would *not* be admitted without a showing that the defendant intended to prevent a witness from testifying"). Finally, defendant asserted that the trial court had erred by failing to make findings of fact or conclusions of law in support

of its decision to overrule his objection to the challenged portion of Officer Kato's testimony, (citing *State v. Silva*, 304 N.C. 122, 136, 282 S.E.2d 449, 457-58 (1981)).[3]

The State, on the other hand, argued that Officer Kato's testimony concerning the statements that Ms. Wells made at the time of the 10 December 2012 incident stemmed from an informal conversation that occurred during an ongoing emergency arising from a domestic dispute between defendant and Ms. Wells, citing *Davis v. Washington*, 547 U.S. 813, 822, 126 S. Ct. 2266, 2273-74, 165 L. Ed. 2d 224, 237 (2006) (explaining that "[s]tatements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency" and "are testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution"). According to the State, the nontestimonial nature of the challenged statements was established by Officer Kato's observations concerning the damage to Ms. Wells's clothing and Officer Kato's decision to "clear" Ms. Wells's apartment. In the State's view, a

---

[3] In addition, defendant argued before the Court of Appeals that (1) the trial court had erred or committed plain error by instructing the jury that it should only consider the issue of his guilt of voluntary manslaughter in the event that it found defendant not guilty of either first-degree or second-degree murder and (2) that the trial court had erred by denying defendant's request for the delivery of an instruction defining the concept of a killing in the heat of passion in a situation involving spousal infidelity. As a result of its acceptance of defendant's confrontation-based claim, the Court of Appeals did not reach either of these instructional issues.

reviewing court must consider the degree of "informality of the situation and the interrogation" in deciding whether to treat challenged extra-judicial statements as either testimonial or nontestimonial, quoting *Michigan v. Bryant*, 562 U.S. 344, 377, 131 S. Ct. 1143, 1166, 179 L. Ed. 2d 93, 109 (2011), with the statements at issue in this case being informal rather than formal. Moreover, even if the statements that Ms. Wells made to Officer Kato were testimonial rather than nontestimonial in nature, defendant had previously had an opportunity to cross-examine Ms. Wells concerning those statements when the 10 December 2012 domestic criminal trespass charge came on for trial, citing *Crawford v. Washington*, 541 U.S. 36, 68, 124 S. Ct. 1354, 1374, 158 L. Ed. 2d 177, 203 (2004) (explaining that, "[w]here testimonial evidence is at issue," "the Sixth Amendment demands what the common law required: unavailability and a prior opportunity for cross-examination"). Finally, the State contends that defendant had forfeited his right to confront Ms. Wells by wrongfully killing her, citing *United States v. Jackson*, 706 F.3d 264, 269 (4th Cir.) (explaining that "defendants might be tempted to murder, injure, or intimidate witnesses before trial and then invoke their constitutional right to confrontation to ensure that those witnesses' statements are never heard in court"), *cert. denied*, 569 U.S. 1024, 133 S. Ct. 2782, 186 L. Ed. 2d 229 (2013), with "[d]efendant's clear intent to prevent Ms. Wells from testifying at any subsequent case [being inferable] from defendant's action of fatally stabbing her in the heart."

After noting that defendant had properly preserved this issue purposes of appellate review, *State. Miller*, ___ N.C. App. ___, ___, 801 S.E.2d 696, 698 (2017), the Court of Appeals pointed out that "[t]he Confrontation Clause of the Sixth Amendment bars admission of testimonial statements of a witness who did not appear at trial, unless the witness was unavailable to testify and the defendant had a prior opportunity to cross-examine the witness," *id.* at __, 801 S.E.2d at 698 (citing *Bodden*, 190 N.C. App. at 513, 661 S.E.2d at 28). According to the Court of Appeals, the statements that Ms. Wells made to Officer Kato on 10 December 2012 were testimonial in nature because "there was no immediate threat or ongoing emergency when the officer spoke to [Ms.] Wells" given that Ms. Wells had reached a safe location by the time that she called for assistance. *Id.* at __, 801 S.E.2d at 698 (citing *State v. Lewis*, 361 N.C. 541, 547, 648 S.E.2d 824, 828-29 (2007)). In addition, the Court of Appeals concluded that the questions that Officer Kato posed to Ms. Wells "were focused on 'what happened' rather than 'what is happening.' " *Id.* at __, 801 S.E.2d at 698 (quoting *Lewis*, 361 N.C. at 547, 648 S.E.2d at 829). The Court of Appeals rejected the State's contention that defendant had "had an opportunity to cross-examine [Ms.] Wells on these issues at an earlier trial for criminal domestic trespass," reasoning that it had no way to know if Ms. Wells "actually gave this testimony at the earlier trial because the record does not contain any transcripts or evidence from that proceeding," *id.* at ___, 801 S.E.2d at 699, and held that defendant had not forfeited his right to confront Ms. Wells despite having killed her on the theory that

"forfeiture [by wrongdoing] applies 'only when the defendant engaged in conduct *designed* to prevent the witness from testifying,' " with the record being devoid of any indication that defendant killed Ms. Wells for that purpose. *Id.* at __, 801 S.E.2d at 699 (quoting *Giles*, 554 U.S. at 359, 128 S. Ct. at 2683, 171 L. Ed. 2d at 496-98). Finally, the Court of Appeals held that the State's failure to argue that the admission of the challenged statements constituted harmless error precluded it from determining that the admission of Officer Kato's testimony concerning Ms. Wells's statements was non-prejudicial. Nonetheless, the Court of Appeals observed that, in light of the presence of overwhelming evidence of defendant's guilt, the disputed testimony "almost certainly played little if any role in the jury's decision to convict." *Id.* at ___, 801 S.E.2d at 700 (first citing N.C.G.S. § 15A-1443(b) (2017); then citing *State v. Bell*, 359 N.C. 1, 36, 603 S.E.2d 93, 116 (2004), *cert. denied*, 544 U.S. 1052, 125 S. Ct. 2299, 161 L. Ed. 2d 1094 (2005)). As a result, the Court of Appeals vacated the trial court's judgments and remanded this case to the Superior Court, Guilford County for further proceedings. *Id.* at ___, 801 S.E.2d at 700. We granted requests by both the State and defendant for discretionary review.

In seeking to persuade us to overturn the Court of Appeals' decision with respect to the admissibility of the challenged portion of Officer Kato's testimony, the State argues that the Court of Appeals erred by overlooking evidence that Ms. Wells's statements were made during an "ongoing emergency" that rendered those statements nontestimonial in nature. According to the State, a reviewing court must

ascertain whether challenged evidence is testimonial or nontestimonial by determining "the primary purpose of the interrogation," quoting *Bryant*, 562 U.S. at 359, 131 S. Ct. at 1156, 179 L. Ed. 2d at 107, with the "primary purpose" inquiry to be focused upon (1) whether the witness "was speaking about events as they were actually happening, rather than describ[ing] past events"; (2) whether a reasonable person, similarly situated to the witness, would have believed that the declarant was "facing an ongoing emergency"; (3) whether "the nature of what was asked and answered" "was such that the elicited statements were necessary to be able to resolve the present emergency, rather than simply to learn . . . what had happened in the past"; and (4) the level of formality at which the questioning was conducted, quoting *Davis*, 547 U.S. at 827, 126 S. Ct. at 2276-77, 165 L. Ed. 2d at 240 (internal quotation marks omitted). In the State's view, a reasonable person would conclude that Officer Kato's questions to Ms. Wells were intended to ascertain defendant's current location and whether defendant posed a continuing threat to Ms. Wells on the theory that Officer Kato questioned Ms. Wells in an informal manner in the street adjacent to her apartment and then in her apartment, rather than in a police station, citing, *inter alia*, *Bell*, 359 N.C. 1, 603 S.E.2d 93. According to the State, at the time that Ms. Wells made the challenged statements to Officer Kato, neither participant in the conversation knew defendant's location; the danger that Ms. Wells faced had not obviously abated; and Ms. Wells was engaged in "the provision of information enabling officers immediately to end a threatening situation," quoting *Lewis*, 361

N.C. at 548, 648 S.E.2d at 829. Next, the State contends that the Court of Appeals' requirement that defendant have actually cross-examined Ms. Wells as a precondition for the admission of the challenged statements reflects an overly restrictive understanding of the relevant confrontation-related jurisprudence, with an opportunity to cross-examine the absent witness being all that is required by the relevant decisions of the United States Supreme Court and this Court, first citing *Bell*, 359 N.C. at 34-35, 603 S.E.2d at 116 (providing that "the Confrontation Clause bars out-of-court testimony by a witness unless the witness was unavailable and the defendant had a prior opportunity to cross-examine him, regardless of whether the trial court deems the statements reliable"); then citing *Crawford*, 541 U.S. at 68, 124 S. Ct. at 1374, 158 L. Ed. 2d at 203 (providing, as we have already noted, that, "[w]here testimonial evidence is at issue," "the Sixth Amendment demands what the common law required: unavailability and a prior opportunity for cross-examination"). As a result of the fact that Ms. Wells was present at defendant's domestic criminal trespass trial and was listed as a witness on defendant's arrest warrant, defendant had an opportunity to cross-examine Ms. Wells. Finally, the State contends that nothing in North Carolina law requires the State to make specific reference to "harmless error" in its appellate brief in order to obtain a finding of harmlessness, citing N.C.G.S. § 15A-1443(b) (2017) (providing that "[t]he burden is upon the State to demonstrate, beyond a reasonable doubt, that the error was harmless"). In view of the fact that "the presence of overwhelming evidence of guilt may render error of

constitutional dimension harmless beyond a reasonable doubt," quoting *State v. Autry*, 321 N.C. 392, 400, 364 S.E.2d 341, 346 (1988) (citing *State v. Brown*, 306 N.C. 151, 293 S.E.2d 569, *cert. denied*, 459 U.S. 1080, 103 S. Ct. 503, 74 L. Ed. 2d 642 (1982)), and the fact that the Court of Appeals acknowledged that the record contained overwhelming evidence of defendant's guilt, citing *Miller*, ___ N.C. App. at ___, 801 S.E.2d at 700, the Court of Appeals erred by failing to find that any error that the trial court might have committed by admitting the challenged portion of Officer Kato's testimony was non-prejudicial.

On the other hand, defendant argues that the Court of Appeals correctly found that the admission of Officer Kato's testimony concerning the statements that Ms. Wells made at the time of the 10 December 2012 domestic disturbance violated his confrontation rights. According to defendant, there was no ongoing emergency at the time that Ms. Wells made the challenged statements to Officer Kato. More specifically, defendant contends that, even though a statement that defendant was in Ms. Wells's apartment without permission would involve an ongoing event, her assertion that defendant had assaulted her and held her in her apartment involuntarily referred exclusively to past events that had no bearing upon Officer Kato's subsequent actions. In addition, defendant contends that the Court of Appeals correctly determined that defendant had not had an opportunity to cross-examine Ms. Wells at defendant's domestic criminal trespass trial given the absence of any evidence that defendant had actually questioned Ms. Wells on that occasion. Finally,

defendant argues that appellate courts regularly default defendants for failing to properly argue prejudice or plain error and that the State should be held to the same standard. Even if the Court elects to reach the harmless error issue, defendant contends that the evidence of his guilt of first-degree murder, as compared to voluntary manslaughter, was not overwhelming. As a result, defendant argues that the erroneous admission of Officer Kato's testimony concerning Ms. Wells's extrajudicial statements at the time of the 10 December 2012 domestic disturbance cannot be deemed harmless beyond a reasonable doubt.

Pursuant to the Sixth Amendment to the United States Constitution and Article I, Section 23 of the Constitution of North Carolina, "a criminal defendant has the right to confront witnesses against him." *State v. Ray*, 336 N.C. 463, 468, 444 S.E.2d 918, 922 (1994). "The Confrontation Clause prohibits the 'admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had had a prior opportunity for cross-examination.' " *State v. McKiver*, 369 N.C. 652, 655, 799 S.E.2d 851, 854 (2017) (quoting *Crawford*, 541 U.S. at 53-54, 124 S. Ct. at 1365, 158 L. Ed. 2d at 194 (2004)). "The Confrontation Clause does not, however, apply to nontestimonial statements." *Id*. at 655, 799 S.E. at 854 (citing *Whorton v. Bockting*, 549 U.S. 406, 420, 127 S. Ct. 1173, 1183, 167 L. Ed. 2d 1, 13 (2007)). As a result of the fact that " '[t]estimony' . . . is typically '[a] solemn declaration or affirmation made for the purpose of establishing or proving some fact,' " *Crawford*, 541 U.S. at 51, 124 S. Ct. at 1364, 158 L. Ed. 2d at

192 (third alteration in original) (quoting 2 N. Webster, An American Dictionary of the English Language (1828)), " 'testimonial' statements" typically include "*ex parte* in-court testimony or its functional equivalent . . . such as affidavits, custodial examinations, prior testimony that the defendant was unable to cross-examine, or similar pretrial statements that declarants would reasonably expect to be used prosecutorially"; " 'extrajudicial statements . . . contained in formalized testimonial materials, such as affidavits, depositions, prior testimony, or confessions' "; and "statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial," *id.* at 51-52, 124 S. Ct. at 1364, 158 L. Ed. 2d at 193 (second ellipses in original) (quoting *White v. Illinois*, 502 U.S. 346, 365, 112 S. Ct. 736, 747, 116 L. Ed. 2d 848, 865 (1992) (Thomas & Scalia, JJ., concurring in part and concurring in the judgment)). "Statements taken by police officers in the course of interrogations are also testimonial under even a narrow standard." *Id.* at 52, 124 S. Ct. at 1364, 158 L. Ed. 2d at 193.

In *Davis v. Washington*, the United States Supreme Court clarified "which police interrogations produce testimony," 547 U.S. at 822, 126 S. Ct. at 2273, 165 L. Ed. 2d at 237, explaining that "[s]tatements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency," *id.* at 822, 126 S. Ct. at 2273, 165 L. Ed. 2d at 237. On the other hand,

statements "are testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution," *id*. at 822, 126 S. Ct. at 2273-74, 165 L. Ed. 2d at 237. For that reason, "interrogations solely directed at establishing the facts of a past crime, in order to identify (or provide evidence to convict) the perpetrator" are testimonial. *Id*. at 826, 126 S. Ct. at 2276, 165 L. Ed. 2d at 240. In order to determine whether a particular statement is testimonial or nontestimonial in nature, the reviewing court must ascertain "the primary purpose of the interrogation." *Bryant*, 562 U.S. at 359, 131 S. Ct. at 1156, 179 L. Ed. 2d at 107 (2011) (quoting *Davis*, 547 U.S. at 822, 126 S. Ct. at 2273-74, 165 L. Ed. 2d at 237).

The United States Supreme Court noted that the extrajudicial statement at issue in *Davis* was made by a declarant who "was speaking about events *as they were actually happening*, rather than 'describ[ing] past events,' " *id*. at 827, 126 S. Ct. at 2276, 165 L. Ed. 2d at 240 (brackets in original) (quoting *Lilly v. Virginia*, 527 U.S. 116, 137, 119 S. Ct. 1887, 1990, 144 L. Ed. 2d 117, 135(1999) (plurality opinion)), while the declarant in *Crawford* was describing events that occurred hours before the challenged statements were made. In addition, the questions posed to the declarant in *Davis* were clearly intended to "elicit[ ] statements" necessary "to *resolve* the present emergency, rather than simply to learn (as in *Crawford*) what had happened in the past." *Id*. at 827, 126 S. Ct. at 2276, 165 L. Ed. 2d at 240. Finally, the declarant

whose statements were at issue in *Crawford* "was responding calmly, at the station house, to a series of questions, with the officer-interrogator taping and making notes of [the declarant's] answers," while the declarant whose statements were at issue in *Davis* provided "frantic answers . . . over the phone, in an environment that was not tranquil, or even (as far as any reasonable 911 operator could make out) safe." *Id.* at 827, 126 S. Ct. at 2277, 165 L. Ed. 2d at 240. According to the United States Supreme Court, the extrajudicial statements at issue in *Crawford* were testimonial, while the extrajudicial statements at issue in *Davis* were not.

As we have previously noted, Officer Kato testified that he responded to a domestic dispute at Ms. Wells's address on 10 December 2012 and made initial contact with Ms. Wells at an unspecified location outside of her apartment. At that time, Ms. Wells told Officer Kato that she "was met by her . . . estranged husband, at approximately 12:00, 12:30, in her apartment, that he entered through an unlocked door, and that she was kept there against her will for a period of two hours." According to Officer Kato, Ms. Wells stated that, during this two-hour period, she and her estranged husband "argued" to such an extent that "[t]he argument became heated at one point," that the argument "escalated to a physical struggle as well," and that, "after [the argument] had deescalated to no longer being physical, she was able to exit the apartment and leave the area in her vehicle." After receiving this information from Ms. Wells, Officer Kato, accompanied by Ms. Wells, "entered the apartment to be sure that [defendant] was not still there, and checked the area."

After discovering that defendant no longer occupied Ms. Wells's apartment, Officer Kato obtained a warrant for defendant's arrest charging him with criminal domestic trespass.

A careful review of the challenged portion of Officer Kato's testimony satisfies us that the statements that he described Ms. Wells as having made at the time of the 10 December 2012 domestic disturbance were nontestimonial, rather than testimonial, in nature.[4] As we understand the record, Ms. Wells made the challenged statements during the course of an ongoing emergency caused by defendant's entry into her apartment and defendant's decision to both detain Ms. Wells at that location and to physically assault her. Although Ms. Wells did describe certain events that had occurred before Officer Kato's arrival outside her apartment, the information that Ms. Wells provided to Officer Kato led to Officer Kato's decision to enter the apartment to ensure that defendant, whose current location was unknown, had departed and no longer posed a threat to Ms. Wells's safety. In light of that fact, the extrajudicial statements that Ms. Wells made to Officer Kato served more than an information-gathering purpose. In addition, the discussion between Officer Kato and Ms. Wells was clearly informal and took place in an environment that cannot be

---

[4] Although defendant asserts that the trial court also erred by failing to make findings and conclusions explaining the basis for its decision to overrule defendant's confrontation-based objection to the admission of Officer Kato's testimony concerning the extrajudicial statements that Ms. Wells made to him on 10 December 2012, he has not cited any authority requiring a trial court to make such findings and conclusions relating to an issue similar to the one before us in this case, and we know of none.

reasonably described as "tranquil," *see Davis*, 547 U.S. at 827, 126 S. Ct. at 2276-77, 165 L. Ed. 2d at 240. Thus, the trial court did not err by overruling defendant's confrontation-based objection and allowing the admission of Officer Kato's testimony concerning the statements that Ms. Wells made to him at the time of the 10 December 2012 domestic disturbance.[5] As a result, we reverse the Court of Appeals' decision and remand this case to the Court of Appeals for consideration of defendant's remaining challenges to the trial court's judgments.

REVERSED AND REMANDED.

---

[5] In view of the nontestimonial nature of the challenged statements, we need not address the validity of the Court of Appeals' determinations with respect whether defendant had an adequate opportunity to cross-examine Ms. Wells at his domestic criminal trespass trial or whether the Court of Appeals erred by refusing to find the admission of the challenged evidence concerning Ms. Wells's extrajudicial statements to have been harmless beyond a reasonable doubt.